## SPENGLER CORE DRILLING CO. v. SPENCER (and three other cases).

(District Court, S. D. California, S. D. January 23, 1926.)

1. Patents ⊗══328—No. 997,358 for double-barrel type rotary core drill held not pioneer.

Ameling patent No. 997,358 for double-barrel type rotary core drill *held* not a pioneer invention.

2. Patents ⊗══39—"Pioneer patent" defined.

"Pioneer patent" is one which first discloses means to accomplish a certain result, and does not include one for a new means to accomplish a result already attained in another way, though it be an improvement on the old way.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Pioneer.]

3. Patents ⊗══253—Patent advancing art only slightly given narrow scope.

If a patent advances the art only slightly, it will be given a narrow scope, and only an approximate copy of the invention will be considered an infringement.

4. Patents ⊗══91 (2)—Prior inventions admissible to show state of art and aid in construction.

To show state of the art at time of patent claimed to be infringed and aid in its construction, any inventions belonging to the art in question that had been already made and used in the country or patented or described in any printed publication in any country are admissible.

**5. Patents ⊙=49—Long unexplained nonuse gives inference against utility.**

Long unexplained nonuse of patentee's invention furnishes inference against utility, requiring it to be limited to what is plainly shown and distinctly claimed.

**6. Patents ⊙=328—No. 997,358 for double-barrel type rotary core drill held valid as improvement, limited to specific form shown, and not infringed.**

Ameling patent No. 997,358 for double-barrel type rotary core drill held valid as improvement, limited on account of prior art to specific forms shown in patent, and not infringed.

In Equity. Consolidated suits for infringement of patent by the Spengler Core Drilling Company against E. A. Spencer, Jr., against the Elliott Core Drilling Company, against L. S. Copelin, and against H. C. Smith, doing business as the Smith Machine Works, and another. Decree for defendants.

Meserve & Meserve, Shirley Meserve, Lyon & Lyon, Frederick S. Lyon, Leonard S. Lyon, and Henry S. Richmond, all of Los Angeles, Cal., for plaintiff.

Frank L. A. Graham, of Los Angeles, Cal., for defendants Elliott Core Drilling Co., L. S. Copelin, and E. A. Spencer, Jr.

Westall & Wallace and Joseph F. Westall, all of Los Angeles, Cal., for defendant H. C. Smith.

### Conclusions of the Court.

McCORMICK, District Judge. These are consolidated suits in equity brought by the plaintiff, Spengler Core Drilling Company, a corporation, as assignee of the patent No. 997,358 issued by the United States Patent Office to Herman R. Ameling of Decatur, Ill., and dated July 11, 1911, to restrain alleged infringement by defendants E. A. Spencer, Jr., Elliott Core Drilling Company, a corporation, L. S. Copelin, and H. C. Smith, doing business under the name of Smith Machine Works and Elliott Core Drilling Company, a corporation, and for an accounting and damages. The defenses asserted are lack of invention, anticipation, and no infringement.

The patent in suit is for a prospecting drill, and, according to the language of the letters patent, "Herman R. Ameling invented a certain new and useful improvement in prospecting drills," and "this invention relates to prospecting drills, and more particularly to core drills of the double-barrel type for use in boring through soft rock, coal, clay, etc.," and "my invention has for its principal objects to secure a perfect core; to provide for adjusting and interchanging the cutting bits to suit different conditions; to avoid the disadvantages of the devices heretofore used; and to attain certain other advantages hereinafter more fully appearing."

Ameling describes the combinations embodying his invention in this manner. The device comprises an outer tube or barrel which is detachably secured at its upper end to a coupling member. The coupling member has a screw-threaded bore which is adapted to receive the end portion of a pipe or tube which is attached to the actuating device of the machine, and through which water is conducted to the outer tube in the ordinary manner. An inner tube or core barrel is fitted loosely inside of the outer tube; there being sufficient space between the two tubes to permit free circulation of water therethrough. The upper end portion of the inner tube or barrel is internally screw-threaded and secured to a tubular bushing, which is provided with an annular shoulder against which the end of the inner tube abuts. Swiveled in the bushing is a cylindrical stem which is screw-threaded so as to fit in a threaded bore in the coupling member. A jam nut is mounted on the stem and adapted to impinge against the end of the coupling member whereby said stem may be locked in adjusted positions lengthwise of said coupling member. The stem member is provided with a collar or annular shoulder which rotatably fits the bore of the bushing. On opposite sides of the collar are antifriction bearings; the upper bearing being retained by the internal annular shoulder at the upper end of the bushing, and the lower bearing by a screw plug in the lower end of the bushing. By this arrangement the outer and inner tubes are independently rotatable, but held against independent endwise movement except for adjustment.

On the lower end of the outer tube is secured an annular bit, whose cutting end and circumferential edge portion may be studded with diamonds or crystals in the usual manner. The diameter of the opening at the cutting end portion of the annular bit is less than the bore of said bit, whereby an internal annular shoulder is provided. The bit is notched or slotted, and said notches or slots extend above the internal annular shoulder, preferably at four diametrical points. However, any desirable number of notches may be provided. As shown in figure 1, the lower end of the core barrel or inner tube is externally screw-threaded, and it has secured thereon an annular core bit. The opening in the lower part of the core bit is contracted, or of less diameter bore of the inner barrel,

and the lower portion of the bit is tapered to a sharp cutting or chisel edge.

In boring through very soft material, the inner barrel or tube is adjusted with respect to the outer tube or barrel so that the chisel edge of the bit extends a short distance beyond the end face of the outer cutting bit. In the operation of the drill, the inner barrel, by reason of its bit pressing ahead of the bit on the outer tube, and owing also to the arrangement of the antifriction bearings and swivel stem, is held from rotation while the outer tube with the cutting bit thereon is being rotated. The water which is conducted through a chamber and passageways in the coupling member and into the upper part of the outer tube is forced through the space between the outer and the inner tubes and passes out through the notches in the bit of the outer barrel. Port openings are provided in the inner core barrel near the upper end thereof so that the confined air is permitted to escape into the space between the two tubes, and thereby prevent the formation of an air cushion on top of the core which would retard the progress of the drill or prevent the core from entering the tube the full length thereof. By adjusting the swivel stem lengthwise of the coupling member, the cutting edge of the core bit may be adjusted to different positions relative to the cutting end of the outer bit, as it is obvious that the chisel edge of the inner core bit may be either flush with the cutting edge of the outer bit or some distance ahead of the same, depending upon the condition or hardness of the material which is to be drilled.

When boring through hard coal or very hard material, a core bit having a blunt end is substituted for the chisel edge bit specified when boring through very soft materials. The inner bit specified when boring through hard material is provided with nitches in its peripheral edge portion, which are arranged to register with the notches or slots in the outer bit. When boring through hard materials, the bottom faces of the inner and outer bits are set preferably flush with each other, and, except where the slots or notches in the outer bit and the nitches in the inner bit respectively register, the two bits fit snugly together all around their cutting edges. Preferably, in the hard material boring construction, the inner core bit is reduced in diameter at its lower end so as to fit the contracted opening at the lower end of the outer bit. In this hard material boring construction the antifriction bearings are removed, and the collar on the swivel stem is moved up against the end shoulder of the bushing, and a block or blocks are inserted in the bushing. These blocks are of such thickness or length that the screw plug will bear against the same when screwed into the bushing, and thereby clamp the collar on the swivel stem tightly into the bushing. To guard against the swivel stem turning independently of the bushing should the clamp become loosened, it is preferable to provide holes in the collar so as to register with the holes in the bushing and to insert pins therein. By this arrangement the two tubes, inner and outer, are fixed so as to rotate together.

The letters patent contain four drawings or figures which illustrate the combinations specified as the preferred forms of embodying the patent which Ameling claims. Figures 1 and 2 show a separately spaced double-barrel rotary core drill forbidding independent endwise movement, and permitting independent rotary movement of the two barrels. In this construction, which is usable only in boring through very soft formations or strata, the cutting end of the inner core barrel is extended ahead of the cutting end of the outer barrel and the cutting ends or bits of each, and both barrels are annular and chisel-edged on the inner bit.

In figures 3 and 4 is shown the double-barrel rotary core drill with two separate barrels or tubes throughout. The means of adjustment at the upper end is so arranged in figure 3 that the lower or cutting ends of the two barrels are flush or on the same horizontal plane, and the two cutting bits, except where the nitches on the inner barrel and slots on the outer barrel register, fit snugly together all around their cutting edges. In this construction, which is to be used only in boring through hard coal or very hard strata or formations, the chisel bit is not used, but instead a core bit having a blunt end is used. While figures 3 and 4 show the two barrel bits flush at the bottom of the tool fixed against independent endwise movement, the specifications expressly state that such relative position of the two bits is the preferred setting, but either in the preferred setting or otherwise the drawings, specifications, and claim of the patent definitely, unmistakably, and exclusively refer to and describe a mechanism or combination in which there are always two separate or independent barrels or tubes throughout and to the very cutting ends fixed against independent endwise movement, regardless as to whether the device is so set at the adjustment points near the upper end to

permit or to prevent independent rotary movement. It is also clear that in all cases where the inner barrel bit is extended ahead of the cutting end of the outer barrel the annular chisel bit is employed by Ameling on the inner or core barrel.

[1, 2] Plaintiff contends that Ameling made a pioneer invention, and that his patent is entitled to be considered as basic and generic. I do not so find. A pioneer patent is one which first discloses means to accomplish a certain result, and the term does not apply to a patent for a new means to accomplish a result already attained in another way, although they may be an improvement on the old way. Some time before Ameling conceived and made his double-barrel core drill which enabled him to take cores from soft formations in his work in excavating for sewers in the vicinity of St. Louis, Mo., in the summer of 1909, others had been successfully taking cores with rotary double-barrel type core drills in the softest formations, and such core drills had been in general use in coal mining operations as early as 1908. It cannot be held that Ameling was the first to solve the problem of preventing the circulating water used in the double-barrel rotary type core drill from coming in contact with the core, and, therefore, to give his patent and claim 1 thereof interpretation that would cover all rotary core drills of the double-barrel type is to create a monopoly in a field of industry that is unwarranted by the evidence in this case. The improvement which Ameling invented and contributed to the art of core drilling does not entitle him to a wide range of equivalents.

[3] The object of the patent law is to secure to inventors a monopoly of what they have actually invented or discovered, and nothing more. To attain this object, the court first looks into the art to find what the real merit of the discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent to secure to the inventor the reward he deserves. If what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringement will be found only in approximate copies of the new device. Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

There are two chief matters that should be considered in order that fair and reasonable construction and interpretation may be given to a patent such as the patent in suit, which, although not pioneer, nevertheless contributed to some extent to the art of taking cores from subsurface soft formations. The first is the prior art as it is disclosed by the record, and the second is the extent of the use of the devices of the patent in suit as shown by the evidence. At the hearing defendants introduced several foreign and American patents, and many public documents and other publications, and much oral testimony concerning rotary double-barrel type core drills which were in general use before the Ameling invention. All of these were presented under the defense of anticipation, and also as illustrative of the prior art. It is unnecessary to specifically review this evidence. Suffice it to say that it is not sufficient to justify a conclusion that the Ameling patent, as this court construes it under claim 1, is anticipated by any earlier invention so as to entirely defeat the patent in suit. However, all of this evidence does operate to limit the Ameling patent, because it clearly shows that the problem of successfully taking cores from interlying soft and hard formations and stratas with rotary core drills of the double-barrel type had been solved by others, and that devices that accomplished such solution had been in general successful use in the mining industry some time before. Ameling produced and used the device upon which he later obtained the patent in suit. Much of this evidence was not before the Patent Office at the time of the grant of the letters patent to Ameling, and in my judgment it is doubtful whether the patent would have been granted if such showing had been made. I refer particularly to the machine described in the evidence as the "Holland" core drill, which, in my opinion, involves the principles and construction of the several devices of the defendants much closer than do the defendants' core drills employ or embody the Ameling invention.

The "Holland" core drill is a rotary drill, and consists of an inner core barrel or tube with an outer barrel. The top of the outer barrel is screwed onto the boring rods or pipes by a connecting piece, while the cutting bit on the outer barrel is screwed on at the lower end. Detachable steel cutting teeth are dovetailed in the crown. The cutters are made of specially tempered steel, and fit in the dovetailed grooves in the crown. They can be easily taken out after they have been worn. On the inside an inner thin cutting crown is screwed on, containing a core-catch-

er. The flushing or circulating water follows down through the space between the outer core barrel and the inner core protecting tube to orifices which are placed in the crown and through which the water is expelled in such manner that it does not come in contact with the core at any time.

There is another rotary core drill of the double-barrel type which the evidence shows was in successful general use in taking cores from subsurface soft formations before the Ameling concept was disclosed. A description of this drill is found in Defendants' Exhibit 2, which is a photostatic copy of portions of volume 2 of "Memoirs of the Government Institute for the Geological Exploration of the Netherlands," dated 1909, and which volume 2 was received and filed in the archives of the Geological Survey of the Interior Department of the United States, and has been available for inspection by the public in the United States subsequent to, November 18, 1909. This previously used core drill consists of a double casing of which the inner one passes over the core; the water being conveyed to the bottom through the channel between the two casings or barrels. The inner barrel may even be suspended on ball bearings, causing it to remain stationary while the outer one bearing the cutting bit rotates. By the latter contrivance the core is also protected from constant rubbing. The crown is forged from special steel, and carries large steel teeth of a special form, which chip away the ground, pressing the material outward, where it is caught by the injected water current which spurts out from channels bored in the crown. The teeth are detachable, permitting them to be easily removed and reinserted. In hard sands or very sandy clays the teeth wear away rather rapidly, and have to be replaced frequently. At the top of the inner tube a valve is provided permitting inclosed air or water to escape outwards only. The core obtained is usually retained sufficiently by suction only though a core-catcher of the ordinary pattern is always inserted. This device the evidence shows works admirably, especially in the sandy clays and scarcely coherent sands.

[4] The plaintiff objected to any consideration by the court of the documents in which there are contained what purport to be printed publications describing the aforesaid two core drills as well as other core drills presented by defendants as showing the prior state of the art to which the invention of Ameling belongs. I find no merit in any of these objections, and they are each overruled, and

the motion of plaintiff to strike out evidence relating to any prior patent or printed publication describing core drills referred to in the evidence is denied. The rule in such cases is that whatever inventions belonging to the art in question that had been already invented and used in the United States or patented or described in any printed publication in any country are admissible, and should be considered by the court to show the state of the art at the time of the patent in question, and to aid the court in the construction of the patent in suit. Walker on Patents, par. 184, p. 245; Dunbar v. Meyers, 94 U. S. 198, 24 L. Ed. 34.

When we consider the state of the prior art as it has been unmistakably shown in this case, we are forced to conclude that Ameling's concept not only does not ascend to the dignity of a generic or pioneer invention, but that, if it marked any advance in the art of core drilling and extracting, it was a very limited progressive step. The invention consists in extending the inner core taking barrel in a double-barrel rotary core drill in advance of the outer barrel, wherein the two barrels are separately spaced in the specific manner and construction shown in figures 1 and 2 of the drawings of the Ameling patent when boring in the softer subsurface stratas or formations and in the specific manner and construction shown in figures 3 and 4 of the drawings of the Ameling patent when boring in hard subsurface stratas or formations.

Claim 1 of the patent in suit, in view of the prior art disclosed, cannot be extended to include core drills in which the cutter body or member is constituted in some other way than by means of two independent and separately spaced barrels and two separate bits. Indeed, it is somewhat doubtful in view of the British patent, No. 1183, to Belsham, granted in 1874, and the testimony of the witnesses McDuffie and Elliott in the record of these cases, detailing experiments and operations with core drills of the rotary double-barrel type in the California oil fields in 1918 and 1919, whether the concept of extending the inner barrel in advance of the outer barrel amounts to more than a mechanical change or a matter of adjustment that would readily occur to a skillful mechanic, and consequently remove such improvement from the field of invention. Be this as it may, it has not been established to my satisfaction that Ameling was the first to successfully introduce this feature into the art of core drilling by means of the rotary double-barrel type core drill.

[5] When consideration is given to the evi-

dence as to the extent of the use of the Ameling devices, the conclusion is irresistible that Ameling's invention is impracticable to adequately meet actual conditions as found in the oil fields, especially of California. For, although his patent was obtained in 1911, there is no evidence that the devices specified by Ameling and covered by claim 1 of the patent are capable of any practicable accomplishment in the satisfactory taking of cores, where the subsurface conditions consist of interlying soft and hard formations or stratas. The requirement of repeated and continuous removals and readjustment to meet different drilling conditions not only impairs, but practically destroys, the Ameling invention as a useful instrumentality in the oil-producing industry. The fact that the Ameling devices have never been used by any one in the recovery of cores in the oil fields of California or elsewhere, although the Ameling patent has been known to the oil industry for several years, is a circumstance which the court must take into consideration in determining the scope of the patent in suit and in giving proper construction and interpretation to claim 1 thereof, because an inventor is entitled to be protected to the extent of what he practically accomplishes and no more. And, where a patent has never gone into actual service, excepting to an extremely limited degree, by personal use of the inventor himself in boring through soft formations entirely in the sewer excavating business, great caution should be exercised by the court in attributing to such patent anything more than is plainly shown and distinctly claimed. As was said by the Circuit Court of Appeals of the Sixth Circuit, in National Malleable Castings Co. v. Buckeye M. I. & C. Co., 171 F. 847, 96 C. C. A. 515: "This inference from nonuse, under the circumstances, is the converse of the inference drawn in respect of a doubtful patent when a showing is made that it has gone into large use and has displaced other devices. It is an inference against utility from the fact of long nonuse, unexplained by want of means or opportunity."

The foregoing doctrine has been approved by the Circuit Court of Appeals for the Ninth Circuit, in an opinion by Judge Hunt, in Henry v. City of Los Angeles, in 255 F. 780, 167 C. C. A. 113.

It is unreasonable to believe that, if the Ameling invention possesses the merit and the scope that plaintiff contends for in these cases, it would have remained dormant, unused, and unemployed when there was eager-

ness and constancy in the demand of the oil-producing industry throughout the United States for a core drill that would successfully secure a perfect core beneficial in prospecting for oil and petroleum products. It was not until core drills constructed from the teachings of the "Holland" core drill were made and successfully used that the problem of successful core drilling in the oil industry was solved, and such drills do not embody the Ameling invention as found in claim 1 of the patent.

I consider it unnecessary to specifically discuss the various devices and constructions which the evidence shows are being manufactured and sold by the defendants, in view of my conclusions as to the scope of the Ameling invention, and as to the limited construction and interpretation of claim 1, which is the only claim involved in these suits, the plaintiff having in open court expressly waived any question of infringement of any other claim by these defendants. It is sufficient to say that in those core drills of the respective defendants wherein the inner teeth are flush with the outer cutters there can be no infringement of claim 1 of the Ameling patent, because such claim necessarily and imperatively calls for an extension of the inner bit ahead of the cutting end of the outer bit. And as to all other devices of the respective defendants introduced in evidence in these cases, or shown to have been manufactured, used, or sold, claim 1 of the Ameling patent, as limited by the construction which the court gives it on account of the prior state of the art, is not infringed, because these devices can all be substantially differentiated from the Ameling concept as described and claimed in the patent in suit. None of such devices have or embody "an outer barrel having an annular cutting bit on the end thereof and an inner core barrel having an annular bit on the end thereof," as such terms are interpreted by the court in construing the patent in suit.

There is nothing in the Ameling patent which teaches how to make a core drill such as the evidence shows is being made and used by the defendants which will accomplish the same results. The mode of operation in all of the devices of the defendants is different in respect to the movement that transmits power to the cutting faces of the drills. There is only one rotative movement in the defendants' drills regardless of the texture of substances penetrated, whereas in the Ameling drill the movement that transmits power is rotative through both barrels when boring in hard substances, and only through the out-

er barrel when operating in soft formations, in which cases the inner barrel is forced ahead and downward by pressure, and is fixed so that it may not rotate. There is no identity of operation in any of the drills of the defendants and the Ameling patent as construed.

[6] I conclude by holding the Ameling patent, No. 997,358, valid as an improvement in double-barrel type rotary core drills, but, on account of the prior art, limited to the specific forms shown in the letters patent, and that none of the defendants' devices infringe said patent.

Accordingly, a decree is ordered for defendants.