## ELLIOTT CORE DRILLING CO. v. SMITH.
### No. 6413.

Circuit Court of Appeals, Ninth Circuit.
June 22, 1931.

Frank L. A. Graham, of Los Angeles, Cal., for appellant.

Westall & Wallace, of Los Angeles, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Appeal from a final decree dismissing the bill of complaint in a patent infringement suit.

Elliott Core Drilling Company, appellant herein, is a California corporation engaged in the business of performing core drilling service and selling core drills. H. C. Smith, doing business under the name of H. C. Smith Manufacturing Company, appellee herein, is in the same business. Each of the parties has a patent on a core drill, and each brought suit against the other charging infringement. The suits were consolidated for hearing, but at the close of the trial the Smith suit was dismissed, appellee advising the trial court that the two forms of core drill were so identical that prior art anticipating one would necessarily have the same effect on the other. Appellee's patent is No. 1,600,073, issued September 14, 1926, and that of appellant, known as the Oliver patent, is No. 1,624,146, issued August 12, 1927, to Fay Oliver. Both patents were copending in the Patent Office. On May 26, 1924, prior to the issuance of the Oliver patent, appellant made a contract with appellee and one Phipps to pay a royalty on the Phipps flush type of bit. Payments of royalty were made under the contract. Later the parties disagreed, payments stopped, appellant acquired the Oliver patent, notified appellee of alleged infringement, and brought this suit.

The Oliver patent relates to rotary core drills such as are used in the oil fields for obtaining samples of the formation being drilled.

There are eleven claims in the patent, and appellant stands on all of them except claims 5 and 6. Claim 1 defines the Oliver invention, and embraces, in combination, the following elements:

In a rotary core drill the combination of (a) a hollow core drill *head having an exteriorly downwardly tapered portion terminating in* (b) an annular cutter at its lower end, (c) a plurality of initial cutting blades *on said tapered portion of the head,* extending outwardly beyond said annular cutter, and a (d) plurality of reaming blades on said head *extending outwardly beyond said initial cutting blades,* (e) the cutting edges of the reaming blades being *above the cutting edges* of the initial cutting blades.

In claim 2 the extension of the initial cutters from approximately the lower end of the head to "a point above the lower end of the reaming cutters" is mentioned. The patent says these cutters "act to stir the fluid admitted through the ports 12 and the formation cut in a manner to prevent the flow of this fluid against the core being formed by the teeth 5," and "the cuttings formed by the teeth 5 and cutters 14 travel upward through the space *formed between the tapered portion of the head 4 and the wall of the well hole formed by the edge 19 of the cutters 14.*" (Italics are appellant's.)

Attention is also directed to claim 11, in which it is stated "said initial cutters and said reaming cutters being arranged to travel in overlapping circular paths."

Appellee relies on several defenses, including lack of invention, which only it will be necessary to consider.

Counsel for appellant frankly states in his brief that he makes no contention that the Oliver patent is a pioneer patent, nor of such scope that it is necessary to ask the court to apply the doctrine of equivalents. It is recognized that the core drilling art is a crowded one.

Appellant stresses the importance of the tapered portion of the drill head terminating in an annular cutter. Tapering a core barrel is not new. It is shown in the Bashara patent, No. 1,477,933, issued December 18, 1923, and in Elliott patent, No. 1,493,112. It is also shown in the "flush type" core used before the Oliver invention, and upon which appellant was paying a royalty to appellee before the commencement of this suit. Furthermore, Oliver, the patentee, disclaimed credit for adding a taper to the barrel. He testified in part: "I don't know where I got the idea of the taper. I really never thought anything about the taper. I suggested thinning them down, that is, thinning the lower end of it down. Before that Smith had been manufacturing core barrels with a taper on them for the same purpose for a long time."

Next attention is called to a plurality of cutting blades, and such are old in the art.

Oliver admits this in his specifications when he states: "Core drills, as now constructed and in common use, have a plurality of oppositely disposed reaming cutters, of which there are generally four, all arranged to cut on the same level and above the lower or cutting edge of the core drill." Reaming blades above and flush with the annular cutters are not new.

Then follows the claim of "extending the cutting blades outwardly beyond said initial cutting blades," etc. This, by the way, seems to have been the extent of the alleged discovery by Oliver, for in disclaiming credit for the taper he says that his device was the Smith shoe except for the cutting surface. "I later got the idea of putting on four blades and bringing two down to be flush with the annular cutters and the cutting off of two of them, having two flush and two above the bottom of the cutters." And again he said, "It was changing the cutting blades, is what it was." Two sets of reaming blades, the lower being less in diameter than the upper, in combination with annular cutters, are shown in Miller's patent, No. 1,499,024. The same idea is shown to have been developed by Crum in "building out" or extending of alternate cutter teeth of the Superior Core Drill. In this connection Palmer, a driller in the oil fields, testified that in 1923 and 1924 he had extensive experience in using core drills and in taking cores; that he had used core drills furnished by the Elliott Core Drilling Company; that the Elliott core drills had four blades all flush on the bottom and all out to gage; that in the early part of 1924 he suggested to McCoy, an employee, and also to the superintendent of the Elliott Company that a change be made in the gage of the drills. "We talked it over," said Palmer. "I think they took about ⅜ of an inch off of two blades, the two lower blades, so that we had two high ones and two low ones and the two low ones were narrower gage than the two high ones, so that maybe the two high blades would keep the hole straight and reamed while the two bottom blades did all the cutting. The change was made right after the conversation." Palmer's testimony is corroborated.

Appellant argues that the Oliver "patent has for its general objects the drilling of a straight hole by means of forming a stepped hole, the location of the cutters on the drill being such that the core will be protected from the flushing fluid, but which will also permit sufficient flushing fluid to get to the teeth to prevent burning."

An examination of Elliott patent, No. 1,-493,112, shows that the drill there provided will bore a stepped hole. The bit shown in the Moran patent No. 1,626,249 will likewise cut a stepped hole. And in the British patent to Belsham, Smith Exhibit 19, the specification states: "The crown cutter of the boring tube is stepped to facilitate the cutting of the bore."

Protecting the core from the flushing fluid and still permitting sufficient flow for cooling is disclosed in Elliott patent, No. 1,493,112; Foster patent, No. 1,574,731; Becker patent, No. 1,577,605; Moran patent, No. 1,626,249; Hill patent, No. 1,427,685; and in the British patent to Belsham.

Judge McCormick, who presided at the trial in the District Court, recognized that the problem before the alleged inventor was particularly the successful and improved practice of taking cores in subterranean operations in the oil industry.

"This field of endeavor," says the learned judge, "has been comprehensively explored and extended for many years. This court had occasion to make a thorough examination of such art in Spengler Core Drilling Co. v. Spencer (D. C.) 10 F.(2d) 579, and the conclusions therein reached were such that it is rather difficult to establish invention in the art under consideration, in view of the many similar and successful methods of taking cores in the oil producing industries that have been utilized in various oil fields for some years past. The various methods and combinations shown seemed to be in the degrees of success rather than in the conception of basic ideas or processes that rise to the dignity of invention. The evidence in the suit at bar has confirmed such conclusions. There is wide-spread difference of opinion by experts and experienced oil producing operators, as to the relative efficiency and success of differently constructed core drills."

In his opinion the learned trial judge further says: "It appears to me what Oliver did was to take the Bashara teachings and especially of Figure 2 and add two of the old flush type blades. The record is clear that blades of that type were old in the art, and there was no invention in their employment in the taking of cores. I think that the difference in dimension of the blades in the two patents does not create any inventive distinction. It seems to me that if there be any difference therein, it is one that would appear readily to any mechanic skilled in the art."

A mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent. Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267; Belding Mfg. Co. v. Challenge Corn Planter Co., 152 U. S. 100, 14 S. Ct. 492, 38 L. Ed. 370; Market Street Cable Ry. Co. v. Rowley, 155 U. S. 621, 629, 15 S. Ct. 224, 39 L. Ed. 284; Railroad Supply Co. v. Elyria Iron Co., 244 U. S. 285, 292, 37 S. Ct. 502, 61 L. Ed. 1136.

The trial court, with opportunity to observe and examine the witnesses, found that "the record discloses that from the early part of 1924 down through the summer of that year, core drills that substantially combined all the elements shown by the patent in suit were in use in the oil fields in Southern California."

Upon careful consideration of the prior art, and giving due weight to the well-established utility of appellant's device and its highly favorable commercial reception, we are unable to find in it room for invention. The most which, to our minds, can be said is that Oliver has, in the exercise of a high degree of mechanical skill, selected and put together the most desirable parts of different devices in the same art, making a new structure perhaps better than any which preceded it, but in which each part operates in substantially the same way as it did in the old and effects substantially the same results. This is not invention. See Edwards v. Dayton Mfg. Co. (C. C. A.) 257 F. 980, 984.

We are in accord with the conclusions reached by the learned trial judge and we approve his finding above quoted. We are of opinion that the evidence in the record sustains both.

The decree is affirmed.