PLASTIC FIREPROOF CONSTRUCTION CO. v. CITY AND COUNTY OF SAN FRANCISCO.

(Circuit Court, N. D. California. October 20, 1899.)

1. PATENTS—INVENTION.
The mere carrying forward and application of old ideas so as to secure a better result, by substituting newer and better materials for those previously used, does not involve invention which will sustain a patent.

2. SAME—ARTIFICIAL SLATE.
Claim 1 of the Brown patent, No. 399,374, which claims "as a new article of manufacture an artificial slate consisting of an interstitial metallic web and a covering of set plastic material, as set forth," having admittedly been anticipated as to the use of sheets of woven wire for the interstitial web, which was the material the patentee had in mind and used when he made his supposed invention, cannot be sustained as valid for the purpose of covering the use of sheets of expanded metal for such web, although such metal, which was the invention of another, was known to the patentee at the time his patent was applied for, and stated to be the preferable material in his specification. The substitution of such metal for the woven wire of the anticipating patent did not involve invention.

There was an action at law by the Plastic Fireproof Construction Company against the city and county of San Francisco to recover damages for the infringement of a patent. On motion by defendant for direction of a verdict.

This is an action at law to recover damages for alleged infringement of letters patent No. 399,374, granted by the United States March 12, 1899, to Calvin Brown, for a supposed invention of a new and useful article of manufacture, called "artificial slate." In the specifications of the patent it is stated that the "invention relates to improvements in roofing and sheathing buildings and other structures, and the object thereof is to obtain an artificial slate of durable and incombustible quality, to take the place of, and be used for the same purposes as, natural slate; and it consists in making, forming, and molding such artificial slate, and in the product so produced, and in the peculiar form and configuration of the slabs or strips thereof." The component parts of the artificial slate, as described in the specifications, are an interstitial web "formed of wire, but preferably, on account of its superior stiffness, of expanded metal," or "slashed metallic screening," made according to the specification of the United States letters patent No. 297,382, granted to John F. Golding on April 22, 1884, and body material of "any impervious, durable, and incombustible substance susceptible of being made plastic, and in this condition worked around and through the interstitial web, afterwards becoming hard and indestructible and adhering closely thereto. These conditions are fulfilled by the use of the best quality of Portland cement, but it is evident that any mastic of suitable materials, properly prepared, may be used for the production of a slate or slab with such an interstitial web." The specifications describe the process of manufacturing the artificial slate as follows: "The slate is molded in an open frame or mold, across which, laterally, are placed rod supports for the sheet of interstitial web by which

the web is raised above the molding bed on which the frame rests, and thus admits of the plastic body material, when fitted into the mold, becoming distributed through and below the web. After the plastic material is consolidated into the mold by tamping or by pressure, and the perfectly formed slate is removed therefrom, the grooves remain, so that afterwards, when the slate is to be laid in place, these grooves may be placed over rods adjusted upon the roof; the slate being held in position thereby, and thus prevented from slipping down upon sloping surfaces. The plastic material, after the slate is formed, being truly surfaced and slicked off on the upper or weather side, the under side being made plain and smooth by the molding table upon which it is pressed, is left for a short time to set, when the molding frame is removed, the slate being then placed aside for further induration until it is fit for use. In this manner it is evident that slabs or strips of any desirable dimensions of combined body material and interstitial web may be made." The drawings referred to in the specifications resemble a molded cement slab, with a sheet of expanded metal for stiffening imbedded in the center; that is, about midway between the top and bottom surfaces of the slab. Only the first claim of the patent is alleged to have been infringed by the defendant, which claim is as follows: "(1) As a new article of manufacture, an artificial slate consisting of an interstitial metallic web and a covering of set plastic material, as set forth."

The case was brought to trial before the court and a jury, and the plaintiff introduced evidence tending to prove that in the new Hall of Justice, erected by the city and county of San Francisco, there was used in the construction of flooring, walls, and ceilings, in the interior of the building, a compound substance of sheets of expanded metal and body material of cement or plaster. The walls and ceilings are similar to other plastered walls and ceilings, except that, in place of wooden laths or wire, sheets of expanded metal were used. The floors were constructed by laying down sheets of expanded metal, and laying over the same cement in a plastic state, about four inches in thickness, so that after the hardening process the floors are in fact monolithic, instead of being constructed of slabs or strips fitted and joined as pieces of slate or tiles would be laid and fitted. The sheets of expanded metal were intentionally placed at the bottom of the cement, so as to secure the greatest advantage in the matter of tensile strength. The material called "expanded metal" is described in the specifications of the Golding patent as follows: "It is made of blank pieces of sheet metal of the required size and thickness, cut or slashed at intervals, each line of cuts being opposite to the spaces between the slashes or cuts of adjoining lines. After the metallic sheet has been so cut, it is stretched in a line transversely to the length of the slashes or cuts, thus forming meshes; the act of stretching causing the metal forming the boundaries of each mesh to become twisted, thus presenting the cut edges of the metal at the surface of the screening." The defendant introduced in evidence the file wrapper and contents, showing all the proceedings relating to the Calvin Brown patent, from which it appears that, in his original application for the patent, Mr. Brown's claims were much broader than the claims in the patent which was finally issued; and the application was rejected in the patent office on May 9, 1888, because the supposed invention was considered to have been anticipated by patents issued to Klueber March 31, 1865, and to Greene September 21, 1886, and to Hyatt July 16, 1878, and to Underwood November 3, 1885. Thereupon Mr. Brown amended his application by substituting the claims set forth in the patent now in suit, for and in place of the broader claims in his rejected application. June 8, 1888, the application was again rejected, because considered to have been anticipated by a patent issued to Turley October 12, 1886, for composite roofing. To overcome the objections on the ground of apparent anticipation of his supposed invention, Mr. Brown submitted evidence to prove that his invention had really been completed in 1881,—a date prior to all the supposed anticipations, except the Hyatt patent of 1878, which is for paving blocks having construction different from that of Brown's artificial slate. In his own affidavit Mr. Brown makes the following declaration: "That during the spring of the year of 1881 (that is to say, during the months of May and June of that year) affiant was in the employ of the United States government, as a civil engineer, at the

Mare Island navy yard, in the county of Solano, in the state of California That about said time, or previous thereto, affiant's attention was called to the fact of the great scarcity in California of natural slate, and the exorbitant prices at which the same was being sold. That by reason thereof affiant conceived the idea of manufacturing an article of artificial slate to take the place of the natural article, and which could be made and sold cheaper than the natural article. With that end in view, affiant, with the assistance of one B. C. Towle, during said months of May and June, 1881, at said Mare Island, conducted a series of protracted experiments in manufacturing artificial slate, and, as the result thereof, made, completed, and perfected the invention described in his said above-mentioned application for a patent. That in said experiments affiant used as his plastic material Portland cement, and as his interstitial web woven-wire gauze, and by means thereof he manufactured many specimens of artificial slate. That each one thereof consisted of a body of plastic material allowed to indurate and set around an interstitial metallic web of woven wire fixed in a temporary frame. The woven wire was first fixed in the temporary frame, and the plastic material, while in a soft state, was then placed around and over the wire, so as to completely cover and envelope it, and was tamped down firmly, and the whole placed aside and allowed to set, after which the slate was removed from the frame, ready for use. That said invention was perfected and completed long prior to December 12, 1885, and as early as June, 1881, and is identically the same invention described in affiant's present application herein for a patent." In this declaration he is supported by the affidavits of Wilfred L. Brown, Frank E. Brown, and B. C. Towle; and upon this showing the application for a patent was granted as for an invention which was fully perfected as early as the month of June, 1881, which was about three years before Mr. Brown had any knowledge of the construction or use of expanded metal as described in the Golding patent, to which reference is made in the specifications of the Brown patent. The defendant also introduced in evidence, for the purpose of showing the state of the art previous to the time of Mr. Brown's supposed invention of artificial slate, a large number of patents for various compositions of plastic material. The defendant also introduced in evidence United States letters patent No. 200,320, issued February 12, 1878, to Michael F. Lyons, of New York, for fireproof material for walls, ceilings, flues, etc., which it is claimed is a complete anticipation of the Brown patent for artificial slate. The Lyons patent is for a new material, consisting of a composition of lime, calcined plaster, coal ashes or cinders, and alum, with sheets of wire net incorporated for toughening material. After the introduction of the defendant's evidence the plaintiff voluntarily entered a disclaimer as to any article of manufacture in which woven wire or any form of wire fabric is used as a constituent, conceding thereby that the Brown patent, in so far as it covers an article of manufacture consisting of interstitial web made of wire, with any kind of cement or other plastic body material, is invalid for want of novelty; but the plaintiff still contends that, as owner of the Brown patent, it is entitled to have a monopoly in the manufacture, sale, and use of the same description of article in which expanded metal is used as an interstitial web in place of wire. After the introduction of all the evidence, the defendant moved the court to instruct the jury peremptorily to render a verdict for the defendant.

John H. Miller, J. J. Scrivner, and N. A. Acker, for plaintiff.

James L. Hopkins, Walter M. Willett, George W. Lane, and Franklin K. Lane, City and County Atty., for defendant.

HANFORD, District Judge (after stating the facts). The motion which has been argued by counsel, and submitted to the court for decision, requires me to decide whether, in view of the admitted facts and uncontradicted evidence, the first claim of Mr. Brown's patent is valid for any purpose whatever. It is for the court to construe the patent, and in doing so it is necessary to give consideration to the drawings and specifications, and the claim set forth

in the patent itself, as well as the declarations of the patentee in the file wrapper; and I must also give effect to the disclaimer which has been made here during the progress of this trial. It is obvious that this first claim of the Brown patent has reference to the production of a particular artificial substance. If it might be regarded as a patentable invention at all, it would have to be classed as one of a secondary character, as distinguished from inventions of a primary character. Therefore the claim must be limited to the particular article specified, and it is necessary to keep in mind that this patent was granted for an invention perfected in the year 1881. Now, what is the article which was at that time produced by the combination of materials according to the formula which at that time Mr. Brown had perfected? Referring to the specifications in the patent, and Mr. Brown's affidavit in the file wrapper, we find that it is an artificial slate, to be used for the same purposes for which natural slate may be used. Natural slate is a metamorphic clay rock. In the quarry and in masses it has cleavage planes, so that it can be readily divided into thin plates or slabs, which are very solid and fine grained, and which may be easily worked and smoothed; and it is therefore useful as a top covering, where such covering is required to be thin, smooth, and water-tight. It is especially valuable for roofing, and in the manufacturing of mantels, billiard tables, and other similar objects. "Whet slate has a fine grain, and makes hones. A tough kind (hornblende slate) is used for flagging and sidewalks. A soft kind, containing carbon (drawing slate or graphic slate), is used for pencils. Polishing slate has a peculiarly fine grain, and is found in Bohemia. It is used in slips and in powder. Slate clay consists of alumina and silica, and, from the absence of fluxes, makes a refractory fire brick." Slate is also made into tablets for use in schools, and wherever it is convenient for writings and drawings intended to be expunged. 3 Knight, Mech. Dict. p. 2199. See, also, Stand. Dict. According to the evidence introduced upon this trial, slate, except when used as tablets, and for such purposes as tablets may be used, is only valuable as an exterior or top covering in the roofing of a building, or for side walls, or for the top of a table, or in any place where an even-surfaced, close-grained, hard, durable, noncombustible, and nonabsorbing substance is desirable. It is used for a top or an outside covering, where thin slabs or strips may be put in place as shingles and tiles are laid. That is the use of natural slate, and, to produce a substitute for natural slate in a form convenient for use, Mr. Brown perfected his formula for a combination of an interstitial metallic web, with plastic material molded into plates or slabs, with smooth surfaces and uniform planes, so as to be portable after the hardening process, and adapted to be laid in place and joined as may be required in the construction of roofs, and the sheathing of buildings, and any similar purposes. It is so stated in the specifications of this patent, and also in Mr. Brown's affidavit, which was made for the purpose of obviating the objections to his application with the broad claims which he originally presented. In his specifications he says:

"My invention relates to improvements in roofing and sheathing buildings and other structures, and the object thereof is to obtain an artificial slate of durable and incombustible quality to take the place of, and to be used for the same purpose as, natural slate."

I do not find in the patent any suggestion of an idea to provide a new material, having additional tensile strength, which might be used for bridge timbers or the framework of large structures. It was the shell, the outer covering, the top covering, of buildings or other structures, which was in this inventor's mind, as shown by his declarations all through the record in the patent office. The connection in which he uses the word "slate" in this first claim of the patent shows that he had in mind something in the nature of a slab or strip having uniform planes, and of definite dimensions,—not any particular size, but whatever dimensions might be required in materials to be laid in place, in connection with other similar slabs or strips, to form a covering. Instead of using words which would carry the idea of a claim to a new substance in mass, like slate in a quarry, he uses the article "an,"—"an artificial slate." This I think fairly implies, as one of the expert witnesses seems to have understood it, that the claim is for material having form and dimensions. In his specifications he speaks of it being molded in form so that afterwards, when the slate has been molded, it may be laid in place. From this description it must be inferred that the manufactured article would be portable, and in shape to be put in place somewhere, instead of being constructed as a continuous, solid formation, constituting a substantial part of a large structure. The kind of interstitial metallic web referred to in the first claim, which the patentee had in mind at the time when he claims to have made the invention, was woven wire. He had no knowledge at that time of expanded metal. And, in the face of the evidence which has been introduced upon this trial, it is now admitted by the plaintiff that there was in fact no originality or invention in the combination of sheets of woven wire with a body material of cement or other plastic substance at that time. Therefore he was in error in supposing that he had made a discovery, or created a new article of manufacture. The combination of materials which he at that time made did not constitute a patentable invention, because in that he had been anticipated. Mr. Brown is not the inventor of expanded metal. After that material had been discovered and described in the Golding patent, there could be no invention in the mere adoption of it as a substitute for a metallic mesh of wire. The expanded metal produced no new result. All that may be said in its favor is that for certain purposes it produces a better result. By the use of expanded metal in place of wire a superior article of artificial slate can be produced, but the mere carrying forward and application of old ideas by the use of the newest and best materials does not require the exercise of the inventive faculties in the human mind. This case seems to come fairly within the rule laid down by the supreme court in the case of Railway Co. v. Rowley, 155 U. S. 621–631, 15 Sup. Ct. 224. The decision of that case appears to rest mainly upon a principle stated in the opinion by Mr. Justice Shiras in the following words:

"A mere carrying forward of the original thought, a change only in form, proportion, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent. Roberts v. Ryer, 91 U. S. 150; Belding Mfg. Co. v. Challenge Corn-Planter Co., 152 U. S. 100, 14 Sup. Ct. 492."

Having given in brief my opinion upon the questions argued in this case, I feel constrained thereby to instruct the jury, according to the defendant's request, as follows: Gentlemen of the Jury: The court instructs the jury to render a verdict in favor of the defendant and against the plaintiff, because the first claim of the patent in suit is void for want of novelty. It will not be necessary for you to retire to render your verdict. The form of the verdict has been prepared by the clerk. It only requires the signature of your foreman to complete it. You may choose a foreman, and let him sign this verdict.