## GRIP NUT CO. v. MacLEAN–FOGG LOCK NUT CO.
### No. 4285.

Circuit Court of Appeals, Seventh Circuit.

May 29, 1930.

Rehearing Denied Aug. 19, 1930.

Frank Parker Davis and George I. Haight, both of Chicago, Ill., for appellant.

Albert G. McCaleb, of Chicago, Ill., for appellee.

Before EVANS, PAGE, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from a decree of the District Court of the United States for the Northern District of Illinois dismissing the bill of appellant for want of equity. The controversy is the usual one arising where infringement of patent is charged. The patent alleged to have been infringed, invented by William E. Sharp for "Improvement in Lock-Nuts and Processes of Making the Same," is No. 1,271,782, and was granted to appellant July 9, 1918. The defenses presented were invalidity of the so-called Sharp patent and noninfringement. The lower court held there was anticipation of the invention by the disclosure of one Howarth's patent, No. 321,500, issued July 7, 1885; and, alternatively, that if Howarth did not strictly anticipate Sharp, appellee, in following the teachings of Howarth, did not infringe Sharp.

There were six claims under appellant's patent, and infringement is charged on the part of appellee as to each. Typical claims of appellant are No. 1 for the process and No. 6 for the device. They are as follows:

"1. The herein described process of producing a lock-nut consisting in forming a blank of substantially equal thickness throughout and solid except for the bolt hole with a centrally disposed rectangular shaped ridge of less width than the diameter of the bolt hole extending across one face thereof intersected by the bolt hole, and forming a thread in said nut, and thereafter placing the same upon a flat surface and applying pressure to the face of the ridge, whereby part of the threads in line with the ridge on each side of the bolt hole are modified, the compressed part of the topmost thread in each case being of a length substantially of the width of the ridge, and the compressed part of each succeeding modified thread being slightly less in length as they approach toward the other face of the nut."

"6. A lock-nut comprising a threaded bolt nut provided with a centrally disposed flat faced ridge across one face thereof severed by the bolt hole, the width of the ridge being less than the diameter of the bolt hole, the threads formed in the ridge being slightly compressed toward the other face of the nut, each succeeding thread of the nut be-

neath the ridge being likewise compressed, but successively shortened in length and disappearing within the body of the nut."

The claims under Howarth's patent, No. 321,500, are as follows:

"1. A nut or other analogous article which has internal screw-threads, having one or more of the convolutions of its screw-thread pressed or indented in the direction of the nut-axis, substantially as described, to form a locking device, whereby, when said nut is screwed onto a bolt or other analogous article having an external screw-thread, the indented portion of the thread in the nut will distort or force out of true pitch some portion of the convolutions of the thread on the bolt, as set forth.

"2. A nut or other analogous article which has internal screw-threads, having a lump or projection, d, formed on its face, in which a portion of the screw-thread is formed, whereby, when this lump or projection is hammered down, as described, in the direction of the nut-axis, the threads of the screw in the nut will be distorted, as and for the purposes set forth."

In describing the means by which his invention may be carried into effect, Howarth, among other things, says:

"One only of the projections d, or more, may be employed as desired, or a projection may be formed around the entire circumference of the edge of the hole through the nut at the outer face thereof when forming the nut-blank, and this projection be hammered or pressed down, so as to press down or indent the convolution or convolutions of the thread next to the outer face of the nut."

On September 8, 1887, British letters patent for "Improvements in Means for Preventing Nuts and Bolts from Working Loose," No. 12,174, were granted to one Bayliss, an associate of Howarth. We quote from the specifications of that patent:

"This invention relates to means of distorting some of the threads of a nut in order to prevent it working loose upon the bolt, or the bolt working loose therein.

"According to this invention the nut is formed of an inner end of the ordinary square or hexagon shape and of an outer end of a lesser exterior diameter, and preferably circular in shape, so as to form a shoulder between such parts; or, otherwise, the nut may be formed of the usual shape and recesses or notches be formed in the outer or top edge thereof so as to form shoulders at their lower or inner ends; and

lumps are formed in the angles of the shoulder or shoulders and are forced into the solid metal of the nuts after the threads have been cut therein, by which means some of such threads are distorted and operate, as they are screwed upon the bolts, to firmly lock or hold the nuts upon the bolts; or instead of forcing in the lumps of metal as described the distortion of some of the threads may be effected by punching down metal in the shoulder or shoulders close up to the angle thereof. * * *

"The effect produced upon the threads of the nut by the forcing in of the lumps is not in all cases easily to be observed by the eye. * * * The downward distortion of the threads of the nut acts upon the threads of the bolt, as the nut is screwed up thereon, in a manner tending to force some of the threads slightly out of true pitch or gauge with the remaining threads of the bolt and thus causes the nut to lock firmly on the bolt. This action or result corresponds with that described, with reference to the locking of a nut upon a bolt, in the specification of an invention entitled 'Improvements in means for preventing nuts and bolts or other screwed parts from working loose' for which Letters Patent were granted to William Bayliss and Robert Howarth dated the 12th May, 1884, Number 7589. The inward distortion of the threads, appears to take place more or less around the entire circuit of the threads, but chiefly at the parts thereof which are adjacent to the sites of the lumps, and the effect of such inward distortion is, obviously to cause the nut to bind or grip tightly upon the bolt and thereby increase its holding power. * * *

"In all these cases, though the exact effect on the threads of the nuts varies to some extent, the spreading of the metal consequent on the forcing in of the lumps or the punching in of the metal produces a distortion of some of the threads of the nuts which causes them to lock or bind tightly upon the bolts, and the nuts may be screwed and unscrewed upon the bolts several times in succession without material injury to the threads and still continue to bind tightly on the bolts."

It is observable from Bayliss's Fig. 1 that the lumps referred to are placed on either side of the bolt hole, one directly opposite the other, although nothing is said in the specifications as to this fact.

With the exception of the lumps, appellee's product, which it is claimed infringes the patent in suit, does not differ materially from the Sharp patent. On the nut manu-

factured by appellee the lumps are on directly opposite sides of and contiguous to the bolt hole, and between the corners of the nut and the bolt hole. They do not extend to the outside edge of the nut, and each is in the form of an arc of two concentric circles. The inside arc of the lump is almost, but not quite, as long as the diameter of the bolt hole. The outside arc of the lump is as long as, and in some cases longer than, the diameter of the bolt hole. This difference in lengths of the arcs causes the ends of the lumps to flare. Some of the lumps are flat and some are slightly convex, and they are perhaps not quite so thick as are those of the Sharp patent. They have the appearance of being constructed with not the same precision as to dimensions. The testimony of Sharp, the inventor, is that, in effect, the lumps on the two products are exactly the same.

It is quite obvious that there is one general principle which governs the operation of each of the nuts above referred to. In each the locking of the nut is caused by friction, and this is brought about by such modification of the threads within the nut as will, when screwed upon a proper bolt, create sufficient friction between the threads of the bolt and the threads of the nut as to resist loosening from vibration or other forces in usage; and it may be said that each nut is quite successful as a locking device. This method of locking nuts on bolts was in use, in a crude form, many years before either of the patents referred to were applied for. It was accomplished by applying external force upon the nut bolt after the nut was finally screwed upon the bolt. This had the effect of disarranging or modifying the threads in such a manner as would cause greater friction, the friction being in proportion to the disarrangement of the threads. It not only required extra labor to accomplish the effect, but the nut could not be removed without great difficulty, and future use of both nut and bolt was greatly impaired, if not destroyed. In the course of time it was conceived that the extra labor could be eliminated by disarranging the top threads of the nut before use; and when the nut was placed in its final position the disarranged threads at the top, by friction, would successfully lock it. The effect on the threads, of course, varied in proportion to the force applied. If excessive force was used the future use of the nut and bolt was destroyed; if less force was used, the locking process was less secure. Even at this stage of the prior art Bayliss observed that in certain cases the nuts might be screwed and unscrewed upon the bolts several times in succession without material injury to the threads and still continue to bind tightly on the bolts.

It must have been apparent at this time, even to a layman, that the fitness of the bolt and nut for future use depended upon the degree and symmetry of the force applied. This was evidently apparent to Bayliss, for he used two lumps oppositely positioned, and in some cases he used three, and he placed them equidistantly around the bolt hole. This furnished the means for a symmetrical and evenly balanced pressure.

Thus far, in our opinion, the ideas of Sharp are copied from Howarth and Bayliss. It remains to be determined what amount of force is to be applied to effect the locking process and at the same time preserve the bolt and nut for future use; and to what particular places on the face of the nut such force is to be applied. These two elements relate almost exclusively to the preservation of the nut and bolt, rather than to the locking process, because the principle of the locking process is the same in all the products, and was in use many years before the existence of the Sharp patent, or any other kindred patent.

It is claimed by appellant that Sharp discovered the formula by which the desired result is to be obtained, the embodiment of which is fully described in Sharp's specifications Nos. 1 and 6. It is to be observed from Sharp's specifications and figures that the ridge or lump extends across the face of the nut, is bisected by, and is of less width than, the bolt hole. The ridge is flat and uniform in height. No further dimensions are given, except that he says he has secured very satisfactory results by constructing the ridge substantially 85 per cent. of the diameter of the bolt hole, and the height of the ridge less than 1 per cent. of the thickness of the nut. An examination of the exhibits of the Sharp patent convinces us that appellant has adhered with precision to these dimension percentages, although we are not informed as to the amount of force necessary to be applied, or whether the same or a different amount of force is used on different nuts. On the other hand, Sharp says that the nut manufactured by appellee produces exactly the same effect as does the nut manufactured by appellant, notwithstanding the facts that the lumps on the nut of appellee are much narrower, some longer and not so

724

high as those on the nut of appellant, and the surface of the lumps is sometimes flat and sometimes slightly convex.

It is therefore quite evident that all the specifications in the Sharp patent cannot be considered as essentials, for the successful use of the nut produced by appellee proves conclusively that it is not necessary for the ridges or lumps to extend to the outer edge of the nut; neither must they necessarily be of the same width or height. Sharp does not say that a lump of greater or less width than 85 per cent. of the diameter may not produce the proper result; he merely says that he has secured very satisfactory results by substantially adhering to those measurements. What did he discover in these particulars that the prior art had not already revealed? Certainly his specifications and testimony disclose nothing other than emphasis of the fact, already suggested by Howarth and Bayliss, that an evenly balanced reasonable pressure upon any sized lumps of the same dimensions, oppositely positioned and adjacent to the bolt hole, will work less damage to the threads on both the nut and the bolt than otherwise. The limit placed by Sharp upon the width of the ridges or lumps is merely another way of saying that pressure shall not be applied to approximately more than 50 per cent. of the circumference of the bolt hole. The height of the ridges acts merely as a gauge to standardize the pressure to be used.

We are therefore forced to the conclusion that Sharp discovered no new thing patentable, but, taught by Howarth and Bayliss, he became proficient in the application of the ideas which they suggested and patented.

The mere carrying forward of the original thought, with a change only in form, proportion, or degree, and doing the same thing in the same way, by substantially the same means, but with better results, is not such invention as will sustain a patent. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136; Market Street Cable Ry. Co. v. Rowley, 155 U. S. 621, 15 S. Ct. 224, 39 L. Ed. 284; Belding Mfg. Co. v. Challenge Corn Planter Co., 152 U. S. 100, 14 S. Ct. 492, 38 L. Ed. 370; Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267; Smith v. Nichols, 88 U. S. (21 Wall.) 112, 22 L. Ed. 566.

Appellant insists, however, that the idea of Howarth was to distort the thread of the bolt by distortion of the thread of the nut;

whereas Sharp's idea was to deflect, and not distort, the thread of the nut, thereby doing no damage to the bolt. In other words, appellant attempts to draw a sharp distinction between the words "deflection" and "distortion." We are unable, however, to define these words with that exactness which enables us readily to distinguish the difference. There is nothing in the root meaning of the word "deflect" to indicate slightness; it means to bend or turn, to deviate from a straight line, or from a proper position. On the other hand, the word "distort" means to twist or to force out of natural or regular shape, and the word "twist" means to turn. The meaning of neither of the words is limited by degree; and yet when we use the word "distortion" in this connection we at once think of an exaggerated deflection; but this interpretation is not supported by the lexicographers. For the purpose of this argument, however, we shall adopt this interpretation of the words, as it is quite as favorable to appellant as it could hope to have.

How then are we to determine when a deflection ceases to be itself and becomes a distortion? It is very evident that it is impossible to say. Different minds would conclude differently. Standing alone the abnormal thing might appear to be a deflection; but place it in juxtaposition to the normal and it at once appears as a distortion. This is well illustrated by Fig. 3 of Howarth. The thread on the bolt where the deflected or distorted nut thread finally rested shows a marked deviation, amounting to an exaggerated deflection when brought into contrast with the normal thread; but the preceding threads over which the same nut had traveled do not appear exaggerated, on account of the lack of contrast. Take, for instance, the nuts manufactured by both appellant and appellee; the threads on both look to the naked eye to be in the same condition, and one would easily regard them as deflections; yet when you look at them through a magnifying lens they appear to be quite distorted, according to the interpretation of the words adopted for this discussion.

As applied to the instant case we are unable to distinguish any difference in the meaning of the words. The deflection of the thread does not cease to be a deflection merely because it results in distortion. The same downward pressure causes each condition, depending upon the amount of force used.

We are of the opinion that Howarth and Bayliss taught everything necessary to instruct Sharp and other members of the public to make what is now relied upon by appellant as an invention; and that Sharp was anticipated by Howarth and Bayliss, whose teachings have been followed by both Sharp and appellee.

Decree affirmed.