## ARTCRAFT SILK HOSIERY MILLS, Inc., v. ROMAN STRIPE MILLS, Inc.

### No. 8025.

District Court, E. D. Pennsylvania.

July 30, 1941.

Herbert J. Jacobi and Jacobi & Jacobi, all of Washington, D. C., and Sylvan H. Hirsch, of Philadelphia, Pa., for plaintiff.

Henry N. Paul, Jr., Paul & Paul, and John H. Austin, all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is a suit by Artcraft Silk Hosiery Mills, Inc., against Roman Stripe Mills, Inc., for alleged infringement of patents No. 1,715,323 and No. 1,915,792. Claims relative to the latter patent were withdrawn.

The plaintiff seeks to have the defendant enjoined from manufacture and sale of the allegedly infringing article, and to obtain an award of an accounting of profits and damages consequent to the alleged infringement.

The complaint was filed January 22, 1934. The action was dismissed for lack of prosecution on February 9, 1940. On March 8, 1940, it was reinstated on the condition that the plaintiff waived its right of action or claim to any account for damages and profits for any act of infringement by the defendant more than three years prior to the entry of the reinstating order.

The issues are (1) validity of the patent, (2) infringement of the patent, and (3) existence of laches barring the plaintiff from relief.

The patent in suit relates to the manufacture of hosiery and provides for reinforcement of a particular point. This point, the point of juncture between the leg, heel and foot portions, is variously known as and referred to as the "corner point", "heel point", "heel corner", "topping corner" and "point of juncture". It is subject to special strain and has long proven a point of weakness and frequent consequent breakage.

It is the plaintiff's contention that the patent in suit represents the final step essential to a successful reinforcement of the area, a step beyond the prior art and use, and one unanticipated by and not a natural development of that art and use. The defendant argues that the prior art and use in manufacture of hosiery either included or anticipated the claims of the patent.

The defendant, as stated, also contends that, in the event the patent is a valid one, there has been no infringement and that, assuming infringement, the plaintiff is barred from relief by laches.

I make the following special findings of fact:

1. The plaintiff is a corporation organized and existing under the laws of the State of Delaware.

2. The defendant is a corporation organized and existing under the laws of the State of Pennsylvania.

3. The patent in suit, number 1,715,323, was issued to the plaintiff as assignee of the applicant, Arthur M. Hahn, inventor, after proceedings had on application filed October 24, 1927.

4. The plaintiff is owner of the entire right, title and interest in the patent.

5. The claims allowed by the United States Patent Office on this patent are:

"(1) A stocking comprising a leg portion knitted with a single thread, a heel portion knitted with a plurality of threads, and a foot portion having the upper part knitted with a single thread and the lower part knitted with a plurality of threads, the leg portion, the parts of the foot portion and the heel portion meeting at points on opposite sides of the stocking, the lower part of the foot portion and the heel portion having extensions at each of these points forming areas knitted with a plurality of threads, each area tapering from the upper and front edges to the lower part of the foot portion and the heel portion respectively towards a point along the junction of the leg and upper part of the foot portion.

"(2) A stocking comprising a leg portion knitted with a single thread, a heel portion knitted with a plurality of threads, and a foot portion having the upper part knitted with a single thread and the lower part knitted with a plurality of threads, the leg portion, the parts of the foot portion and the heel portion meeting at points on opposite sides of the stocking, the lower part of the foot portion and the heel portion having extensions at each of these points forming areas knitted with a plurality of threads, each area extending at an angle to the wales from the upper and front edges of the lower part of the foot portion and the heel portion a short distance along the junction of the leg and upper part of the foot portion, and including the corresponding meeting point of the leg, foot, and heel portions."

6. The plaintiff notified the defendant in June, 1929, that plaintiff charged defendant with infringing the patent in suit.

7. The plaintiff instituted this action January 22, 1934. It was dismissed February 9, 1940, under a Rule of court, for lack of prosecution. On March 9, 1940, by an order of court conditioned on plaintiff's waiver of claim to an accounting for damages and profits for the alleged infringement for a period more than three years prior to March 9, 1940, the action was reinstated.

8. The point of juncture between the leg, heel and foot portions of hosiery for many years has been known to be a point of special strain, weakness and resultant breakage.

9. Hosiery manufacturers endeavored for many years prior to the patent in suit to devise satisfactory reinforcement for this point of juncture and did reinforce the hosiery at this point.

10. In the days when stockings were considered to be articles of underwear, and durability was the dominant consideration, heavier yarns were used, and, therefore, a relatively small area of protective reinforcement (about two wales) was sufficient to prevent breakage at the point of juncture.

11. As time went on, the art turned to sheer fabrics, and a larger area of protective reinforcement was provided. By the year 1925, it was common practice to bury the point of juncture to the extent of four to six wales, depending upon the fineness of the yarn, and this was done in seamless hose, in full-fashioned hose, and in hose in which the legs were knitted on circular machinery and the feet on full-fashioned machinery.

12. Prior to Hahn's invention, where breakage at the corner point was encountered, such difficulty was overcome by the provision of greater protective reinforcement.

13. Prior to Hahn's invention, it was old in the art to provide a "tapered heel" formed by diagonal steps above the corner point and it was also old in the art to provide a so-called "cradle foot", formed by diagonal steps below the corner point.

14. Neither Hahn nor anyone else in the employ of the Artcraft Company originated these style elements.

15. The stocking of the defendant which is charged to infringe embodies only the feature of style and corner point protection which were old in the art and in public demand prior to Hahn's entry into the field.

16. The claims of the patent in suit call for tapering or angular extensions for protecting the points of juncture, and define the location of such extension areas as "at each of these points". These extension areas consist of patches at the point of juncture.

17. The prior patent to Lengel, No. 1,759,754, discloses a triangular patch at the point of juncture, and states that the purpose of this patch is to "satisfactorily eliminate such structural weakness at these points, and at the same time improve the appearance of the product".

18. In Fig. 6 of the Smith patent, No. 1,120,419, there is shown a stocking having a tapered high splice above the corner point, a rectangular block protecting the corner point, and a cut-back sole formed by stepping below the corner point. The shape of the reinforced area and the manner in which it protects the point of juncture is comparable to the stocking of the defendant which is charged to infringe the Hahn patent.

19. In the latter part of 1924 or the early part of 1925, the Cadet Knitting Company began to manufacture and sell publicly the stocking exemplified by defendant's Exhibits N-3 and N-4.

20. The Cadet stocking was made with the Oesterreich attachment shown in patent No. 1,644,688.

21. It was the practice of the Cadet Knitting Company to bury the corner point in the reinforcement to the extent of four wales, and the tapering of the reinforced areas was accomplished by stepping in and out with the Oesterreich attachment.

22. Defendant's Exhibit N-4, showing the Cadet stocking, was copyrighted on October 18, 1927.

23. Examples of seamless hosiery in which the corner point is protected by reinforced areas of various shapes and designs are found in the following prior art patents:

White, No. 450,655.
Place, No. 466,374.
Smith, No. 1,120,419.
Hauck, No. 1,493,203.
Ruedt, No. 1,578,372.
Lengel, No. 1,759,754.
Lawson, No. 1,801,279.

24. Various schemes for protecting the corner point in full-fashioned hosiery are illustrated in the following prior art patent:

German patent to Wieland, No. 430,501 of 1935, and in the following prior public uses:

Nolde & Horst Company.
Cadet Knitting Company.
Aberle Company.
Onyx Pointex Company.
Finery Silk Stocking Company.

25. In defendant's hosiery, the diagonal steps above and below the corner point are incorporated therein only for the purpose of style and have no utility insofar as the protection of the corner point is concerned.

## Discussion.

Full fashioned hosiery is subjected to particular strain at the heel point in manufacture as well as in use or wear. It was the professed object of Hahn to remedy the weakness at this point. Many years prior to the patent in suit manufacturers reinforced the hosiery at this point. Hahn claimed invention, however, by effecting a distribution of the strain there centered into the area surrounding the heel point, between it and the instep portion of the hosiery.

The prior use and art of hosiery manufacture encompassed structures, the purpose of which was reinforcement of the area above the heel point. Principal among these was that in which the usual heel and foot reinforcement was carried to a point a short distance beyond the heel point. However, just as the shortening of women's skirts occasioned the introduction of sheer hosiery, the change from high to low shoes brought about a change in the styling and extent of heel and foot reinforcement. This change resulted in a withdrawal of reinforcement from areas where its appearance was deemed somewhat offensive and a consequent exposure of the heel point in some heel and foot styles.

Hahn stated in the specification accompanying his application for a patent that the reinforcement could be of any shape and could be with or without tapered edges. And his original claim called simply for a structure "reinforced at its (the leg's) point of juncture with the heel and foot portions". However, when the examiner disallowed this claim on the basis that reinforcement against wear is devoid of invention, Hahn defined more clearly the aim and operation of his invention and revised his claim. As revised, the first claim is specifically limited to and definitive of a structure with reinforced areas tapering from the upper and front edges of the lower part of the foot portion and the heel portion respectively toward a point along the juncture of the leg and upper part of the foot portion. A second claim was filed later, after cancellation of all original claims, which recited that extensions of the reinforced areas were to be "at an angle to the wales from the upper and front edges of the lower part of the foot portion and the heel portion a short distance along the junction of the leg and

the upper part of the foot portion, and including the corresponding meeting point of the leg, foot, and heel portions."

As defined in these two claims and elucidated by correspondence, a patent was allowed on the invention.

The defendant argues that prior art, use and patents encompassed or anticipated the patented structure, and has afforded numerous exhibits to establish the contention.

The defendant argues further against the validity of the patent that inventive faculty was not essential to the development of structure, that it was merely the result of the exercise of skill in making an advance plainly indicated by the prior art. In other words, the defendant argues that common sense alone suggested the patented structure.

The original first claim was disallowed because it was deemed to disclose a structure common sense would suggest; it called simply for reinforcement of the area. However, plaintiff contends, as was explained to the examiner in the revised claims, the object and operation of the reinforcement was to distribute strains in a particular manner, and not simply to endure the friction of wear.

Notwithstanding plaintiff's contention, I have come to the conclusion that every element of the claims of the Hahn patent is found in the Lengel stocking antedating the Hahn patent. Lengel, like Hahn, was concerned with the "side points of special strain and relative structural weakness", and it was also the object of his invention to "satisfactorily eliminate such structural weakness at these points, and at the same time improve the appearance of the product". Lengel's remedy was "to provide substantially isosceles triangular reinforced extensions" Lengel also employed "reinforced high splice and reinforced foot yarns beyond the heel pocket junction". Such additional yarns formed "a triangular shaped reinforcement" for the purpose of "protecting the weak apex point of · the heel pocket ordinarily found in stockings as commonly made". This is practically what Hahn did.

■ The fact that Lengel's stocking is a seamless stocking instead of a full fashioned one is of no importance. The distinction does not appear in the claims of the Hahn patent. In Julius Kayser & Company v. Rosedale Knitting Company, 3 Cir., 98 F.2d 839, certiorari denied 305 U.S. 649, 59 S.Ct. 230, 83 L.Ed. 419, the Circuit Court of Appeals for this circuit in affirming the District Court, 18 F.Supp. 836, held that there was no invention in applying to the hosiery art what was well known in the weaving art. If there is no invention in taking something from the weaving art to the hosiery art, there is no invention in taking something from the seamless hosiery art to the full fashioned hosiery art. I conclude that the Hahn patent was anticipated by the Lengel patent.

■ The step taken by Hahn has made no new contribution to the art. It was but a trifling improvement over the former art of reinforcement and one which was a spontaneous occurrence in the course of normal· development of the art. Inventive faculty was not requisite to the design. The law will not protect mere shadows of invention and devices amounting at most to a minor improvement in the art. An advance plainly indicated by the prior art is not patentable. Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Belding Mfg. Co. v. Challenge Corn-Planter Co., 152 U.S. 100, 14 S.Ct. 492, 38 L.Ed. 370; Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005.

■ It appears that every one in the business of manufacturing hosiery was groping and fumbling for a slight novelty in design and operation of reinforcement and that mere application of common sense and skill resulted in the design patented by Hahn. As was said in Re Campbell, Cust. & Pat.App., 48 F.2d 915, 917: "There are numerous authorities to the effect that ordinarily the application of reinforcing devices to a structure does not involve invention".

The Supreme Court in the case of Dunbar v. Myers, 1876, 94 U.S. 187, 199, 24 L.Ed. 34, 39, stated that: "Meritorious inventors are entitled to protection; but it is settled law that a mere carrying forward of an original patented conception, involving only change of form, proportions, or degree, or the substitution of equivalents, doing the same thing as the original invention by substantially the same means, is not such an invention as will sustain a patent, even though the changes of the kind may produce better results".

■ Concluding that the Hahn patent was anticipated and is invalid for lack of

invention, it is unnecessary to determine the questions of infringement and laches.

### Conclusions of Law.

1. The Hahn patent in suit, No. 1,-715,323, is anticipated by the prior art patent to Lengel.

2. In the light of prior art, the Hahn patent is invalid for lack of invention.

3. The bill of complaint should be dismissed with costs awarded to defendant.