### PEARSON SANDING MACH. CO. v. WILLIAMS FURNITURE CO.

#### No. 4967.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

H. Hamlin Hodges of Washington, D. C. (Hodges & Hodges of Washington, D. C., and W. C. McGowan of Columbia, S. C., on the brief), for appellant.

Shepard K. Nash, of Sumter, S. C., and Paul B. Eaton, of Washington, D. C., for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Pearson Sanding Machine Company (hereinafter called Pearson) is the owner of two patents: (1) Jones patent No. 2,167,-573, issued July 25, 1939 (hereinafter called the sanding head patent), for a sanding wheel head designed for the finishing of woodwork; and (2) Jones patent No. 2,182,-725, issued December 5, 1939 (hereinafter called the table patent), for a machine, including a table, which operates the sanding head.

Pearson, as plaintiff, instituted, in the United States District Court for the Eastern District of South Carolina, a civil action against Williams Furniture Company (hereinafter called Williams), as defendant. The complaint charged infringement of the two patents in suit by Williams, through the use by Williams, in its furniture factory at Sumter, South Carolina, of a sanding head and a machine.

After a trial, oral argument and submission of briefs, Circuit Judge Northcott (sitting by designation as District Judge for the Eastern District of South Carolina) adjudged both the patents in suit invalid and dismissed the action. From this judgment, the plaintiff, Pearson, has duly appealed to this Court.

Judge Northcott found:

"First, the Jones patent No. 2,167,573, referred to as the sanding head patent, was anticipated by the prior art, particularly by the Reed patent No. 1,056,058, and the Pearson patent No. 1,988,361.

"Second, the Jones patent No. 2,182,725, referred to as the machine and table patent, was anticipated by the prior art, particularly by the Bennett patent No. 1,-816,069, and the Wegner patent No. 1,778,-132."

In his memorandum opinion, filed in the District Court, Judge Northcott also stated: "Two facts are clearly established and are supported by substantial evidence. First, the amended applications for both the Jones patents were not accompanied by the affidavits required by Rule 78, for amendments containing material additions; second, the evidence establishes the fact that machines made under the claimed Jones invention, patent No. 2,182,725, were demonstrated for sale in the latter part of the year 1934 or early in the year 1935 when the application for the patent was not filed until September 7, 1937, more than two years afterwards."

Since we agree with Judge Northcott that the two patents in suit are invalid under the prior art, and this is sufficient to justify an affirmance of the judgment below, this opinion, too, will discuss only the validity of the two Jones patents.

*The Sanding Head Patent.*

Claim 6 of the Sanding Head Patent (Jones No. 2,167,573) reads as follows: "A sanding head including a body portion having a peripheral flange, a radially grooved resilient rim held in the angle be-

tween the periphery and the flange of the body portion, rigid retainers hinged on one side of the resilient rim substantially in alignment with the bottom of the radial grooves, and adapted to extend through the said radial grooves, and holding means adapted to secure the said rigid retainers on the side of the body portion remote from the peripheral flange."

This type of sanding head has long been known under the prior art and used in many patents. Quite old, too, is the mounting of sanding heads on a shaft attached to the motor, with the motor affixed to the frame of a table, and with the shaft extending through an aperture or opening in the top of the table. The motor on many machines has also been vertically adjustable, thus permitting the sanding head to be raised or lowered as might be needed in different types of work on objects or materials of varying sizes and kinds. Felt, or other resilient material is used for the making of the sanding head, while the periphery of the sanding head is grooved to suit the desired type of sanding or molding. To the circumference of the sanding head, an abrasive material is fastened, usually by clamps in grooves. These features had frequently been used under the prior art long before the issue of the sanding head patent to Jones.

How strikingly similar, we think, is this Jones patent to the prior patents of Pearson and Reed (on which Judge Northcott rested his opinion) will quite clearly appear from the subjoined pictures of these three sanding heads.

THE REED SANDING HEAD

THE PEARSON SANDING HEAD

We feel we are fully justified in holding that the only marked change, the only valuable improvement, in the Jones sanding head, when compared with those of Pearson and Reed, will be found (as set out in Claim 6 of the Jones patent) in the "rigid retainers hinged on one side of the resilient rim substantially in alignment with the bottom of the radial grooves, and adapted to extend through the said radial grooves, and holding means adapted to secure the said rigid retainers on the side of the body portion remote from the peripheral flange."

Pearson secured the abrasive material to the periphery of the resilient material by wires (which were not genuinely rigid) in the grooves, the wires being bent around (above and below) the abrasive surface. Reed, for this same purpose, employed metal hooks. The "rigid retainers" of Jones were small metal pieces, cylindrical in shape, with rounded or spherical heads; the whole device presenting an appearance in the nature of a small dumb-bell.

The evidence seems to show that these "rigid retainers" of Jones constituted a better device than either the wires of Pear-

THE JONES SANDING HEAD

son or the hooks of Reed. The "rigid retainers" apparently were more effective than the wires or hooks in holding the abrasive surface firmly and evenly to the periphery of the resilient surface while the sanding head was in operation.

We do not think, however, that so slender a performance as that would justify the issuance of a patent on the Jones sanding head. Such an improvement falls far short of patentable invention. It was hardly more than the exercise of mechanical skill in changing the shape, size and material which strengthened only one part of the sanding head.

■ Thus in Tropic-Aire, Inc. v. Cullen–Thompson Motor Co., 10 Cir., 107 F.2d 671, 674, the Court said: "A mere carrying forward of a known principle, or change in form, size, proportions or degree, or doing the same thing in the same way by substantially the same means, with better results, is not in itself invention."

■ And, again, in Hobart Manufacturing Co. v. Landers, Frary & Clark, D.C., 26 F. Supp. 198, 202, affirmed 2 Cir., 107 F.2d 1016, it was held: "A mere difference or change in the mechanical construction in size or form of the thing used, in order to obviate known defects existing in the previous devices, although those changes are highly advantageous, and far better and more efficacious and convenient, does not make the improved device patentable."

See, also, Belding Manufacturing Co. v. Corn Planter Co., 152 U.S. 100, 14 S.Ct. 492, 38 L.Ed. 370; Premier Machine Co. v. Freeman, 1 Cir., 84 F.2d 425, and particularly, Detroit Gasket & Manufacturing Co. v. Victor Manufacturing & Gasket Co., 7 Cir., 114 F.2d 868.

■ Even more trenchant is the language of Mr. Justice Douglas in the recent case of Cuno Engineering Corporation v. Automatic Devices Corporation: "Under the statute * * * the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. * * * The new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain. * * * Strict application of that test is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art." (314 U.S. 84, 90, 91, 92, 62 S.Ct. 37, 40, 86 L.Ed. 58).

■ In the light of this test, we think the Jones patent No. 2,167,573 for the sanding head was essentially anticipated under the prior art and is thus invalid.

### The Table Patent.

■ We have even less hesitation in holding the Jones table patent No. 2,182,725 invalid under the prior art. Quite clearly (as Judge Northcott held) it "was anticipated by the prior art, particularly by the Bennett patent No. 1,816,069, and the Wegner patent No. 1,778,132".

Claim 2 of the Jones table patent reads: "A frame, a table forming a part of the frame and having an elongated opening extending to one edge thereof, a vertically adjustable pivoted support mounted on the frame, a motor mounted on the support and adapted to swing laterally with respect to the table, a shaft extending through the elongated opening to assume a horizontal position, a sanding wheel on the free end of the shaft, and means for swinging the motor laterally whereby the sanding wheel may be operated in various positions from a vertical to a horizontal plane."

A mere reading of this claim would seem to condemn it. One of the Jones tables was exhibited in our Court. A careful inspection of this table convinces us that scores of similar tables may be seen in many factories and shops. Nor are we impressed by the insistence of appellant's counsel, on oral argument, that there was real originality in "an elongated opening extending to one edge" of the table. Such slots are quite old.

Indeed, there is not a single important feature of the Jones table that gives evidence of any striking originality. The Jones table is a clear nonpatentable aggregation of old elements, each performing an old function. In no proper sense can the Jones table be said to be a patentable combination. The distinction between the nonpatentable aggregation and the patentable combination was discussed by us at some length in Connecticut Paper Products, Inc. v. New York Paper Co., 4 Cir., 127 F.2d 423.

No useful purpose would be served here by repeating or re-hashing that discussion. In the light of the tests and principles therein laid down and discussed, the Jones table patent No. 2,182,725 fails to rise above the dignity of a nonpatentable aggregation. It is, therefore, invalid.

We are here concerned only with Claim 6 of the Sanding Head Patent (No. 2,167,-573), and Claim 2 of the Table patent (No. 2,182,725). Our decision, then, extends to, and covers, only these two claims.

The judgment of the District Court is affirmed.

Affirmed.