**WILLAMETTE–HYSTER CO. v. PACIFIC CAR & FOUNDRY CO. et al.**

**PACIFIC CAR & FOUNDRY CO. v. WILLAMETTE–HYSTER CO.**

No. 9653.

Circuit Court of Appeals, Ninth Circuit.

July 28, 1941.

Albert G. McCaleb, of Chicago, Ill., John W. Reynolds, Austin F. Flegel, Jr., and Reynolds, Flegel & Smith, all of Portland, Or., for Willamette-Hyster Co.

John F. Reilly, of Portland, Or., Frank E. Liverance, Jr., of Grand Rapids, Mich., Battle, Hulbert, Helsell & Bettens and Cook & Robinson, all of Seattle, Wash., for Pacific Car & Foundry Co. and another.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

The five patents involved in this litigation all relate to a device which the appellant characterizes as a "tractor-and-fair-lead-trailer equipment", which may be more properly characterized as a portable jib crane.[1]

The plaintiff, Willamette-Hyster Company, appellant, and the defendant, Pacific Car and Foundry Company, appellee, are both manufacturers of such cranes for use in the logging industry. The cranes now manufactured by each company are substantially identical. Each claims that the crane of the other infringes its patents in suit. While the alleged infringing devices are manufactured for and used in logging operations, the claims of the patents in suit are not confined to that industry or purpose.

The special master appointed by the trial court found all the patents involved to be valid and non-infringed. Exceptions were taken by the appellees to the special master's findings as to the validity of the plaintiff's patents except as to Wickes and Neils No. 1,797,064, and Walker, No. 1,920,613 and also to the findings of non-infringement of defendant's patent No. 1,918,409 issued to it as assignee of R. S. Langdon. The plaintiff excepted to the finding of non-infringement as to its patents and the defendants excepted to the finding of non-infringement as to the patent set out in their cross-complaint. The trial court overruled all the exceptions and entered a decree dismissing both the complaint and cross-complaint. The plaintiff appealed from the decree and the defendant took a cross-appeal from that part of the judgment dismissing its cross-complaint and counterclaim for infringement of its patent No. 1,-918,409, supra.

The appellant is the owner of Meister patent No. 1,797,063, applied for January 31, 1930, by the Electric Steel Foundry Company, assignee, and issued March 17, 1931, for an apparatus and method of moving material.

Appellant alleges that all eleven of the claims of this patent were infringed by the

---

[1] Jib cranes can be subdivided into fixed cranes and portable cranes; in the former, the central post or pivot is firmly fixed in a permanent position while, in the latter, the whole crane is mounted on wheels so that it may be transported from place to place. The following is from the Encyclopaedia Britannica, vol. 6, p. 635, Fourteenth Edition:

"Cranes, machines by means of which heavy bodies may be lifted and also displaced horizontally, within certain defined limits. * * * Strictly speaking, the name alludes to the arm or jib from which the load to be moved is suspended, but it is now used in a wider sense to include the whole mechanism by which a load is raised vertically and moved horizontally. * * * The use of cranes is of great antiquity, but it is only since the great industrial development of the 19th century, and the introduction of other motive powers than hand labour, that the crane has acquired the important and indispensable position it now occupies."

appellees. It also owns the Wickes and Neils patent, No. 1,797,064, applied for May 2, 1927, and issued March 17, 1931, for a log transporting vehicle. It alleges that claim 2 of this patent is infringed by appellees' machine.

Appellant also owns patent No. 1,920,613, issued August 1, 1933, upon an application filed by Fletcher L. Walker, November 5, 1928, and alleges that claims 4, 5, 6, 7, 9 and 10 thereof were infringed by the appellees' machine. It owns the patent to Nourse and Wickes, No. 1,945,976, applied for July 16, 1930, and issued February 16, 1934, and alleged that all the eleven claims of that patent were infringed, but it has abandoned this contention on appeal except as to claims 1, 6, 7, 10 and 11.

The appellee, Pacific Car and Foundry Company, owns patent No. 1,918,409, applied for by it as assignee of Robert S. Langdon, July 2, 1931, patent issued July 18, 1933, for a boom yarder. By cross-complaint and counterclaim it alleges that the plaintiff has infringed this patent.

It is conceded that the machine constructed by the Pacific Car and Foundry Company conforms to its patent No. 1,918,409, and that the appellant's machine also comes within this patent and if it be valid infringes the patent.

Before a detailed consideration of the problems involved on this appeal, it is manifest that the principal problem in the development of a portable crane for use in logging operations arises from the difficulty of the terrain in which such operations are conducted and the very heavy loads to be lifted and transported. Any novelty in the patented devices must lie, not in the use of a portable crane and the usual combination of mechanical elements therein, but alone in the elements, if any, added to the well-known portable crane combination. The general plan of operation of the mechanical combination contemplated by all the five patents in suit involves the use of a winch and cable operated by the engine of the tractor to pull the logs from the position in which they have been felled to the portable crane and then to lift the ends of the logs toward the fair lead, which corresponds to a heavy block, at the upper end of the jib. The logs are then fastened in this position by making fast the cable by brake or otherwise. The tractor then pulls the whole load to the desired destination, dragging the after end of the logs on the ground. Details of these operations and mechanical construction will be more fully explained by reference to diagrams and descriptions.

In the machines manufactured by the appellant and also by the appellee, Pacific Car and Foundry Company, the portable crane is in two sections, a tractor, with its winch, and a trailer. The fair lead, which corresponds to the block at the upper end of the jib of the crane, from which the weight of the front end of the logs is suspended during the process of transportation, is supported by the trailer. To overcome the forces tending to capsize the trailer due to the side pull of the cable in gathering the logs and to the shifting of the weight of the logs after being lifted in position, it is obvious that if the logs are heavy as they are in the Pacific Northwest, the trailer must be of massive construction with a broad base and that the position of the fair lead from which the logs are supported should be no higher above the center of gravity of the trailer than is absolutely necessary and, also, that the center of gravity of the load during transportation be as near the ground as possible. It is to this general problem and to a consideration of the many stresses and strains involved in moving logs through a forest over rough and precipitous terrain that the inventors directed their efforts.

The appellant claims that the Meister patent, No. 1,797,063, is a basic and pioneer patent which has revolutionized the logging industry. It claims that this machine has not only made the logging operations more economical but has made it possible to successfully log rough and precipitous land which had theretofore been considered impossible to log without the investment of large sums of money for railroad construction and equipment.

The appellees attack the validity of the Meister patent upon the ground of prior publication and prior use. The question of prior publication is presented in a somewhat novel form and involves a consideration of a patent to G. E. Spain, No. 1,694,931, applied for May 4, 1927, and issued December 11, 1928, for a method and apparatus for transporting logs.

It will be observed that patent to Spain was issued less than two years prior to the application of Meister, but more than two years before it was granted (March 17, 1931). The Spain patent which had been issued prior to appellant's application was cited by the patent office as a complete an-

ticipation of the appellant's Meister patent. The appellant, apparently conceding the similarity of Spain's patent to his own alleged invention and in order to overcome the citation of the Spain patent by the patent office, filed affidavits showing that his invention had been made prior to May 4, 1927, the date of Spain's application. Upon the strength of these affidavits the Meister patent was issued. The Spain patent is immaterial herein except as it shows an opinion of the patent office that the Spain and Meister patents were for the same combination and indicates the acceptance of that opinion by the appellant.

The appellees contend that Spain's invention had been published as early as August, 1927, in "The Timberman", and, consequently, that the combination of the Meister invention had been thus published. Three of the patent drawings in Spain's application, Figs. 5, 6, and 7, were contained in The Timberman of August, 1927, in connection with an article describing the trailer-tractor-fairlead equipment, subsequently patented to Spain and later to Meister, if the two are identical, as claimed by appellees. The appellant concedes that the publication in The Timberman was more than two years prior to the Meister application but claims that the disclosures therein were insufficient to enable one schooled in the art to construct the Meister machine and, consequently, that it was an insufficient publication to anticipate and invalidate his patent. As the Meister patent is claimed to be the basic and revolutionary patent, we will first devote ourselves to a consideration of that patent with relation to the alleged publication in The Timberman.

We quote from appellant's brief a statement of the nature and character of the Meister patent and the mechanical elements entering into the patent, as follows:

"A tractor-and-fairlead-trailer equipment always comprises five absolutely indispensable elements.

"The five (5) indispensable elements to which we refer are:

"1. A tractor,—such tractor desirably, but not necessarily, being a crawling tractor of the 'caterpillar' type.

"2. A powerful winding drum at the rear of the tractor,—such drum desirably forming part of a hoist or winch which can be (a) driven from the tractor engine, (b) locked against rotation, or (c) allowed freely to pay out line.

"3. A sturdy two wheel trailer,—such trailer comprising two wheels (desirably of the crawler type), a load carrying connection (preferably a straddling arch) between the wheels, and a tongue.

"4. A fairlead,—such fairlead being carried at a high point on the trailer, and desirably consisting of a pair of parallel rollers disposed in vertical planes, and a horizontal roller.

"5. A line, in operative relation to the drum, extending upwardly to, through and beyond the fairlead to choke a log or logs, —such line preferably being a metal cable provided with a terminal choker and a plurality of 'running' chokers."

These elements are also shown in the brief by inserting therein Fig. 3, a drawing of the Meister patent. The claims are epitomized therein by the words "tractor", "drum", "trailer", "line", "fairlead", superimposed upon the patent drawing. The drawing thus modified is as follows:

## TRACTOR-AND-FAIRLEAD-TRAILER EQUIPMENT OF MEISTER PATENT

The appellant's brief quotes, as further epitomizing the patent combination, the following passage from the second paragraph of the specifications of Meister's patent:

"The present invention consists briefly in the attachment of a vehicle having a high arch connecting separated ground supports, preferably of the crawler type, to a tractor, arranging a cable, or line, actuating drum on the tractor and leading the cable, a line, from the drum through fairleads * * on the arch."

We have already referred to the publication in The Timberman of August 1927 as describing the equipment subsequently patented to Spain. The article, with illustrations, was as follows:

---

# Trucks - Trailers - Tractors

## High Wheel Skidding with Tractors

TRACTOR skidding and high wheel logging are two established methods that have long since found their respective places in many of the pine regions of the Pacific Greater West. When the two methods are combined an entirely different system results which possesses the advantages of both and a number of its own, as well as eliminating the "bunching" operation.

The combination requires a specially equipped set of high wheels, mounting a fair-leader on the arch member and a tractor with a winch or at least one drum. In logging with this system the tractor is close coupled to the high wheels as shown in Fig. 1, with its skidding line passing through the fair-leader and attaching to four chokers. Hauling in on the line brings the logs into the position shown in Fig. 2 and subsequently into the hauling position shown in Fig. 3 when they may be wheeled to the railroad spur or loading point. Only one drum of the standard tractor is used and the distance logs may be skidded to the wheels may vary from 75 to 100 feet. The hauling distance ranges up to 1000 feet in usual practice.

The high wheel system which is sponsored by the Willamette Iron & Steel Works of Portland, embodies the

*Fig. 1—Wheels are backed to logs as they lay when bucked. Chokers are applied to logs and in turn to hooks on drum cable. Bunching operation is eliminated*

*Fig. 2—Drum on rear of "Caterpillar" tractor hauls logs to position between the wheels. Roller fairleader mounted on top of high wheels*

*Improved high wheels equipped with fairleader on arch member, for use with tractor skidding system. See text for complete specifications*

---

use of the Willamette skidding drum on the "Caterpillar" and special wheels designed and built by this company, which are illustrated in this connection. The specifications are of interest: Width over outside tires, 10 feet; width of tires, 19 inches; diameter of wheels, 8 feet; clearance from ground to top of arch, 6 feet 6 inches; clearance between axle and front structural cross member, 3 feet; distance from axle to towing shackle, 12

*Fig. 1—Logs are pulled up to lower side of axle and held in position with locking brake. One man (tractor driver) controls entire loading operation. Under average conditions this unit will skid 40,000 feet per day, on a maximum haul of 1000 feet*

feet; diameter of vertical rolls, 8 inches; diameter of horizontal rolls, 32 inches; vertical rolls chilled cast iron with bronze bushings; horizontal roll manganese steel fitted with Timken roller bearings; wheels fitted with Timken bearings, spokes covered with steel guard plates on inside to prevent limbs from protruding through spokes; total weight, 8600 pounds.

An Oregon company using the high wheel tractor system reports the cost of skidding to be 86 cents per thousand feet, based on an average production of 135,000 feet. The cost exhibit appears in the table above.

### COST EXHIBIT

| Tractor Crew—(6 Men) | | Totals |
|---|---|---|
| 2 Choker setters- 8 hours at 32 cents | $5.32 | |
| 1 Driver 9 hours at 75 cents | 6.75 | |
| | $15.07 | |
| | X3 | |
| Total expense drivers and choker setters | $45.21 | $45.21 |
| ½ Night watchman at $110.00 per month | $2.12 | |
| ⅓ Foreman at $250.00 per month | 3.85 | |
| ½ Upkeep merchandise at $250.00 per month | 4.80 | |
| ½ Mechanic's helper at 60 cents per hour | 2.40 | |
| Total upkeep expense | $13.17 | $13.17 |
| **Depreciation and Repairs** | | |
| 25% on tractors and hoists based on original purchase price of $6,250.00 | $5.21 | |
| 25% of high wheels based on purchase price of $1,750.00 | 1.46 | |
| Miscellaneous to cover cable, chokers, repairs, etc | 2.50 | |
| Total depreciation | $9.17 | |
| | X3 | |
| | $27.51 | $27.51 |
| Oil and Gas | | 30.00 |
| Total skidding expense per day | | $115.17 |
| Average production per day: 135,000 feet | | |
| Cost per thousand | | 85c |

It will be noted that this description and the figures to which it refers, which are copies of those in the Spain patent, contain not only a full disclosure of the Spain patent but an equally full disclosure of the combination of the Meister patent. It has the "tractor", the "drum", the "line", the "trailer", the "fairlead" referred to in the appellant's brief and shown in the drawing therein above mentioned. The only answer to this prior publication made by appellant is that the publication was too indefinite to disclose the invention to the public. Evidence to that effect was presented and the trial court found the fact to be that the disclosure was inadequate. To set out the testimony on this point in full in this opinion would unduly extend it.[2]

It is sufficient to say that the combination of The Timberman does work and is the combination which the appellant claims to be revolutionary. The publication does not show exact detailed construction, nor attempt to specify the strength of the various parts, neither do any of the patents in suit. It should be noted that the appellant claims every combination, of the same or equivalent elements, whether used in logging or for any other weight moving purpose. Its various elements, however constructed, would necessarily be adapted to the particular work to be done. Such adaptation would require mechanical or engineering skill, but the appellant's patent claims are an assertion that they have supplied all the inventive genius necessary to supply the mechanic and engineer with the data needed in perfecting and adapting the patented combination to the various purposes for which the combination is used. The same rules as to the sufficiency of the description in a patent apply to the printed publication. 48 C.J. § 52, pp. 49, 50, 51.

Since this publication in August 1927 anticipated Meister's application made in January 1930 by more than two years it invalidated Meister's patent. 35 U.S.C.A. § 31; Roemer v. Simon, 95 U.S. 214, 24 L.Ed. 384; Maibohm v. R.C.A. Victor Co., 4 Cir., 89 F.2d 317.

Since there was a publication of Meister's patent in The Timberman of August, 1927, it is unnecessary to consider the other publications in that journal in November, 1927 and January, 1928, also relied upon by appellees. For a like reason it is unnecessary to consider whether there was also anticipation by two years of public use, as contended by appellees; but it may be observed that although there was evidence from which the trial court might have found that Meister made public use of his invention in the spring and summer of 1927, which was more than two years before his application in 1930, this evidence was not so conclusive as to require such a finding. The question was one of fact and the trial court was warranted in finding upon the evidence, as it did find, that the use then made was experimental only. Cf. Elizabeth v. Pavement Co., 97 U.S. 126, 24 L.Ed. 1000; Cline Electric Co. v. Kohler, 7 Cir., 27 F.2d 638, certiorari denied 278 U.S. 646, 49 S.Ct. 82, 73 L.Ed. 559.

We next consider Wickes and Neils patent, No. 1,797,064. This patent was applied for May 2, 1927, two days before Spain's and issued March 17, 1931. It is not claimed that this patent was anticipated by the Timberman publications. They were made after the application for this patent. If it is invalid it is for other reasons. Before considering that question it will be necessary to consider the extent of the Wickes and Neils claim number 2, the only one sued upon.

The original application of these patentees was broad enough to include the combination claimed by Meister, but all the claims covering that combination were

---

[2] The two questions propounded to witness Spain, the inventor of the Spain patent, and his answers thereto, which follow, will illustrate the nature of the testimony as to the inadequacy of the publication:

"Q. With all the information that you had at this time in the making of wheels by Meister and the experimental work that was done that you have described, what would you say as to having information yourself as of the date of this Timberman as to making a successful operating job without further experiment or trial? A. Well, the only way I could answer that is to describe what we had. We didn't have a successful job. At the time this was published we had our second hoist, which was our first single drum unit, and the wheel that we had built was the J. Neils wheel which I have described as demonstrated at the J. Neils Lumber Company. We actually had not made one yet at this time, in other words, if that answers your question, with the information that we had up to that date.

"Q. Do you feel that this set of drawings gave more information as to how to build one of these jobs than you knew at that time? A. No."

withdrawn by the applicants excepting claims 1 and 2, the second of which is as follows:

"2. In a device for bunching and for hauling logs, a laterally positioned high arch, a pair of endless track trucks, each of the ends of said arch being pivotally supported by one of the trucks, a frame extending forwardly of the arch, a tractor articulated with the frame, cable winding means on the tractor, cable guiding means at the top of the arch and cable means secured at one end to the winding mechanism and having log gripping means at its other end whereby upon operation of the winding mechanism on the tractor a log is brought into hauling position with relation to the arch and trucks, while the arch is held by the total weight of the tractor and the trucks."

It will be seen that this claim covers the use of all the elements of the Meister combination as stated above but uses a pair of endless track trucks as the "separated ground supports" claimed in the Meister patent.[3] The original application of Wickes and Neils contained seventeen claims sufficiently broad to cover the use of round wheels as well as other "ground supports". These seventeen claims were withdrawn. In asking leave to make this withdrawal the attorney for applicants states that in a companion case, evidently the pending Meister application, the "underlying inventive thought which is involved in the logging system herein disclosed" will be discussed. That Meister system is thus described in the letter of withdrawal:

" * * * the handling of a high arch with a trailer secured to a tractor handling a cable from the winding device through a fairlead at the top of the arch, said cable being such as to permit of the gathering of the logs and bunching them as they are dragged in toward the arch through the fairlead operation, carried in position under the arch, lifted into underslung position, and then moved through the action of the tractor, the logs, or at least the forward ends of the logs, being carried by the trailer."

Here is a clear recognition that the "underlying inventive thought" of the system is Meister's combination and that Wickes and Neils did not invent this combination.

In making the change in the claims of the application, it was urged upon the patent office that the substitution of the crawler type of wheels for the high round wheels used by Meister, was not a mere substitution of a mechanical equivalent but rose to the dignity of an invention. The attorney who represented these patentees stated: "It is contended by counsel that the crawler type of element herein is not the mechanical equivalent of a high wheel although at first glance it may appear to be so". To facilitate the granting of this patent Meister, whose application was also pending, represented by the same attorney filed an affidavit asserting that the crawler type of supports were much superior to high wheels such as he had used and the attorney announced to the patent office on January 6, 1931, that, "We have taken out all the claims in this case that are not limited to the crawling type of ground engaging support. We do this because we do not believe that these claims should be in this application * * *." On the other hand, Meister "disclaimed" the use of the crawler type in his combination.[4] But, notwithstanding the alleged disclaimers, the claims of both patents as issued broadly claimed the same combination and the patents were issued on the same day (March 17, 1931). However, the disclaimer of Wickes and Neils did aver without qualification that the applicants did not invent the combination shown in Meister. To thus concede the invention of the combination to have been made by another and, nevertheless, to claim the entire combination with the substituted

---

[3] Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, of the Meister patent do not use the terms, wheels, or endless track trucks, or "crawler type of wheels" but instead use the all inclusive term "a vehicle comprising separated ground supports."

[4] "Line 5, after 'expressed' insert—While I have shown ground supports of the crawler type, I made no specific claim to this type of support as distinguished from other types of ground supports.

"Remarks

"We are placing the foregoing amendment in response to a suggestion that the claims of another application directed to the crawler type of ground supports in a combination similar to what is shown here will without such disclaimer be suggested to Meister.

"Meister does not claim to have invented the crawler type of support as distinguished from the high wheel type in the combination set forth in the claims of this application.

"Respectfully submitted,
"John H. Meister
"By H. C. Lord,
Attorney for Meister."

element invalidated the patent claim, under the rule announced in Rogers et al. v. Alemite Corp., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251, and reasserted in Lincoln Engineering Co. v. Stewart-Warner Engineering Corp., 303 U.S. 545, 58 S.Ct. 662, 664, 82 L.Ed. 1008. In the latter case a patent had been obtained for the combination of a headed nipple, for receiving lubricant, a grease gun and a coupler having a multi-jawed chuck which is closed over the head of the nipple by the pressure of the grease acting on a piston within the tube of the coupler. This patent was held void, the court saying:

"Butler may have devised a patentable improvement in such a chuck * * * but we think he did no more than this. As we said of Gullborg in the Rogers Case, having hit upon this improvement he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination. The patent is therefore void as claiming more than the applicant invented. The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced * * *, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

▌ There remain for consideration appellant's patents to Walker, No. 1,920,613, and Nourse and Wickes, No. 1,945,976. Appellant contends that, since no exception was taken by the appellee to the master's finding that these patents were valid and his report was approved by the trial court, their validity must be deemed admitted for the purposes of this appeal. It has indeed been held that under equity rule 66 an appellant cannot attack the master's findings to which he has not seasonably objected prior to their approval by the trial court. American Surety Co. of New York v. James A. Dick Co., 8 Cir., 23 F.2d 464, certiorari denied, 278 U.S. 624, 49 S.Ct. 26, 73 L.Ed. 545; Cromwell v. Skinner, 10 Cir., 62 F.2d 432, certiorari denied 289 U.S. 754, 53 S.Ct. 785, 77 L.Ed. 1498. Assuming that the law in this respect has not been changed by the New Rules, cf. Rule 53, 28 U.S.C.A. following section 723c, we are of opinion that these cases do not qualify the rule recognized by this court in Oliver-Sherwood Co. v. Patterson-Ballagh Corp., 9 Cir., 95 F.2d 70, in which we held that when the trial court had held patents valid but not infringed and plaintiffs appealed, the defendant could, upon such appeal, and without a cross-appeal, attack that portion of the findings and decree which held the patents valid. In the case at bar the judgment was for a dismissal. The appellant in this case maintains, contrary to the ruling of the lower court, that its patents were infringed; but obviously the decree of the lower court was right if the patents were invalid, for a void patent cannot be infringed. In Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28, 29, a patent infringement suit, the court said, "* * * appellant [plaintiff] insists we should consider only the questions which the District Court decided against it. This is not the rule. Appeals in equity bring up the whole case (with certain inferences in favor of the decree below), and the decree below should be sustained if it was right for any reason. Linde Co. v. Morse Co. (C.C.A. 2) 246 F. 834, 837." See also, Kool Kooshion Mfg. Co. v. Mitchell Mfg. Co., 8 Cir., 102 F.2d 37; Morley Const. Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593; Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263. We therefore hold that the validity of both the Walker and the Nourse and Wickes patents may properly be considered upon this appeal.

▌ Walker's application was filed November 5, 1928, although his patent was not granted until August 1, 1933. In the meantime Meister's application had been made January 31, 1930, and his patent granted March 17, 1931. Although Walker's claims to a combination are broad enough to include Meister's, appellant insists upon this appeal that Meister is the inventor of the combination of his patent and, since appellant is the assignee of both patents, we therefore read Walker's patent in the light of Meister's invention. And it may be observed in this connection that Spain's patent, which we have held not to be essentially different from Meister's was applied for before Walker's (May 4, 1927) and issued before Walker's.

Walker's patent, having eleven claims, has been thus characterized by appellant in its brief:

"Walker's important contributions to the development of tractor-and-fairlead-trailer equipment may be listed as follows:

"(a) a forked tongue sloping upwardly to the front from a low level (i. e., sloping upwardly from the horizontal plane of the trailer crawler axles);

"(b) a ground clearance for a forward portion of the tongue which is greater than the ground clearance of the tractor axles;

"(c) a downwardly extending neck (constituting the foremost extremity of the tongue) which is hitched to the tractor;

"(d) arrangement of the trailer framework so as to permit varying of the inclination of the fairlead supporting arch in effecting adjustments, fore and aft, in the positioning of the fairlead."

It will be observed that the "contributions" lettered (a), (b) and (c) have to do solely with the position and shape of the tongue while that lettered (d) provides for adjusting the supporting arch fore and aft. We are unable to find an invention in any of these features, considered by itself. Certainly a tongue connecting the tractor and trailer was not new. Nor can it be said that a forked tongue is new or that the mere position of the tongue with respect to the ground clearance of the tractor is in the nature of an invention. And so with the downwardly extending neck, a matter of form and position involving nothing more than the exercise of mechanical skill. Cf. Smith v. Nichols, 21 Wall. 112, 119, 22 L.Ed 566; Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Wilson Western Sporting Goods Co. v. Barnhart, 9 Cir., 81 F.2d 108, a decision of this court. As for the claim involving the "fore and aft" adjustment of the supporting arch, it is clearly subject to the same objection. Cf. Kalamazoo Loose Leaf Binder Co., v. Wilson-Jones Loose Leaf Co., D.C., 286 F.

715, 719. None of these features involved any change of function. It could not therefore be patented as an improvement upon the Meister combination. However that may be, Walker was not content to advance his claims as individual improvements. Each of his claims in suit, 4, 5, 6, 7, 9 and 10, covers also all of the features of Meister's combination, of which Walker at no time made any claim to being the inventor[5] and of which appellant maintains Meister and not Walker was the inventor. Walker's patent claims in suit are therefore void under the rule of Lincoln Engineering Co. v. Stewart-Warner Corp., supra. Here too it is unnecessary to consider the charges of infringement.

This brings us to Nourse and Wickes, No. 1,945,976. This patent was applied for on July 16, 1930, and issued February 6, 1934. Its dates of application and issue are therefore later than any of the other patents thus far considered. Of its fourteen claims appellant relies upon five only in this appeal, viz, Nos. 1, 6, 7, 10 and 11. Of these claims all but the first are subject to the same vice as those in Walker's patent. Each claims in addition to a structural modification, the combination which appellant maintains was Meister's invention.[6] Each of them (6, 7, 10 and 11) is therefore invalidated by the rule in Lincoln Engineering Co. v. Stewart-Warner Corp., supra. But the first claim of narrower content does not cover the Meister combination. It is as follows:

"1. A skidding arch having in combination a pair of laterally spaced crawler type ground-engaging members, a frame pivotally mounted on said ground-engaging members having its upper portion over-hanging the front and rear ends of said ground-engaging members, the forward end thereof constituting a means for attaching same to

---

[5] Claim number 4 of the patent will indicate the nature of all the claims of the patent in suit. It is as follows:

"4. In a material moving apparatus, the combination of a power-actuated tractor; a trailer comprising ground supports; a load-carrying support mounted on the ground supports; a tongue connecting the trailer with the tractor, said tongue sloping upwardly toward the forward end; a drum on the tractor; a lead on the support; and a line extending from the drum past the lead."

[6] Claim No. 10 of the Nourse and Wickes patent is a fair sample of the claims thereof, other than claim 1, and is as follows:

"10. In a material moving apparatus, the combination of a power-actuated tractor; a vehicle comprising crawling type ground supports and a load-carrying and hitch-securing frame pivotally mounted on the ground supports and hitched at its forward end to the tractor, said frame acting as a lever of the first class between the load and the hitch; a fairlead on the frame above and to the rear of the ground supports; a drum on the tractor above the hitch; and a line extending from the drum through the fairlead."

a tractor and the rearward end thereof constituting a means for supporting a load when the arch is attached to a tractor and the load in position to be moved behind the rearmost portion of said ground-engaging members."

It will be noted that this claim makes no reference to a winding drum, to a fairlead or to a cable, although it does include a trailer of the crawler type hitched to a tractor. In essence it covers an undescribed frame pivotally mounted upon a trailer and overhanging the trailer at both ends with a means of hitching to the tractor at one end and of supporting a load at the other. There is obviously nothing new in hitching a trailer to a tractor. Nor is there invention in providing undisclosed means for supporting the load at one end of the frame. Presumably this load was to be supported somehow by a rearwardly inclined arch; but if so there was no invention in that feature. The arch was old in the art. To incline it rearwardly was a mere change of position, a clear case of ordinary mechanical adaptation. See Elliott Core Drilling Co. v. Smith, 9 Cir., 50 F.2d 813, 816, where it is said: "A mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent. Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267; Belding Mfg. Co. v. Challenge Corn Planter Co., 152 U.S. 100, 14 S.Ct. 492, 38 L.Ed. 370; Market Street Cable Ry. Co. v. Rowley, 155 U.S. 621, 629, 15 S.Ct. 224, 39 L.Ed. 284; Railroad Supply Co. v. Elyria Iron Co., 244 U.S. 285, 292, 37 S.Ct. 502, 61 L.Ed. 1136."

### The Cross-appeal.

Defendant Pacific Car and Foundry Company, in its cross-complaint, charged that the plaintiff has infringed claims 3, 7, 8, 10, 13 and 14, of its patent No. 1,918,-409, issued to it as assignee of Langdon. The court held that these claims were valid but that they must be restricted to the specific form of construction shown in the patent application. Thus narrowed, the claims were held not to be infringed by the cross-appellee. Langdon's patent was applied for on July 1, 1931, and issued July 18, 1933.

Thus, the application for this patent was filed after the applications in all the other patents in suit. It was pending while the applications of Walker (1,920,613) and Nourse and Wickes (1,945,976) were pending, but patents were issued to Meister (1,797,063) and to Wickes and Neils (1,797,-064) before Langdon's application was made. The cross-appellant concedes that Langdon's device was late in the field and must therefore be regarded as an improvement only, but contends that it is an improvement that has swept the field and proven so useful that it is entitled to liberal treatment on account of its superior merit, according to rule announced in Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523.

Although the cross-appellant concedes on this appeal that its (Langdon's) patent was for an improvement only, the patent, as to some of its claims in suit, is for the entire combination. Claims 7, 8 and 10, here in suit, with immaterial changes in terminology, cover the essential elements of the combination published in the Timberman, supra, or their equivalents, as well as the slight changes which cross-appellant contends were improvements invented by Langdon. The terminology of the patent claims is somewhat different from the Timberman publication, supra, but the winch, or winding drum, of the Timberman publication does not change its nature by being designated in the Langdon patent as a "cable guiding equipment" nor does "a guiding means" in the Langdon patent signify anything but a "fairlead" of the Timberman publication. "Supporting struts" of the Langdon patent obviously perform the same functions as the arch in the Timberman publication and are its mechanical equivalent in the combination. All these elements of the combination were also shown in the Meister patent issued on March 17, 1931, prior to the application of Langdon for the patent in suit. These claims (7, 8 and 10) are for the entire combination and are void as excessive claims of invention under the rule announced in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, supra.

Claim No. 3 of the Langdon patent is for a logging trailer.[7]

---

[7] "3. A logging trailer comprising, in combination, transversely spaced wheels, a frame carried therebetween and extending forwardly thereof for attachment to a tractor, a rearwardly extending boom having a line leading over the rear end thereof to draw in a log or logs and raise the same into hauling position below the boom, and means including upright struts for supporting said boom on said frame

The cross-appellant, in its brief, treats the placing of the fairlead at the projecting rear end of a boom which extends back from its supporting struts as the principal feature of the Langdon patent because the overhang leaves ample space for the ends of the logs and permits them to swing or the frame to turn without engaging any part of the framework of the trailer. The cross-appellee contends that this construction of the boom set out in claim 3 is old and that it is not an invention of Langdon. In support of this contention appellant cites the construction of a trailer manufactured and publicly used by Villair in 1929 and of another one manufactured and publicly used by Webster in August, 1930, and its own "Hyster skidding boom", and the Nourse and Wickes patent, supra, applied for in 1930 and issued in 1934.

The trailer of Villair featured a fairlead carried by an upwardly and rearwardly inclined boom mounted on a trailer. This trailer was manufactured with two large wheels. The trailer manufactured by Webster was similar to that of Villair but he substituted the crawler type of ground support for the wheels used by Villair. Later, in August, 1930, the cross-appellee offered to the public a boom type trailer shown in its published catalogue with the boom extending to the rear beyond the crawler supports which it named "the Hyster skidding boom".

The trailer of Villair and Webster were publicly used before the date of Langdon's application and the cross-appellee's boom type trailer was published by it as an advertisement before that date. Langdon's application did not carry his invention back before that date. In that situation it must be presumed that these trailers which were publicly used or published prior to his application were also prior to his claimed invention. Eagleton Mfg. Co. v. West, Bradley & Cary Mfg. Co., C.C., 2 F. 774, 777 affirmed 111 U.S. 490, 4 S.Ct. 593, 28 L.Ed. 493; cf. Hann v. Venetian Blind Corp., 9 Cir., 111 F.2d 455.

The cross-appellee also contends that Langdon's patent was anticipated by that of Nourse and Wickes, supra. Nourse and Wickes showed a frame with a rear fairlead overhanging the rear end of the crawler wheels in order to leave ample space to receive the front ends of logs. This is in substance the third claim of Langdon. As previously stated, the application of Nourse and Wickes was made on July 16, 1930, and their patent was issued February 6, 1934, between which dates Langdon's patent was both applied for and issued. While we have held the Nourse and Wickes patent claims in suit to be void for the reasons above stated, this holding does not prevent the disclosures of these claims from showing that Langdon was not the first inventor of the combination he claimed in the third claim of his patent. Milburn Co. v. Davis, etc., Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651. It follows that the third claim of the Langdon patent is invalid because it does not show invention over the prior art cited by the cross-appellee.

We now turn to claims 13 and 14 of the Langdon patent, shown in note.[8] There is

at three points of contact intermediate the ends thereof, one of which points is at the forward end of said frame and the other two rearwardly thereof, said boom supporting means being so arranged that the boom projects rearwardly to permit logs to be normally carried thereunder and extend either rearwardly or in sharply lateral directions freely of the boom supporting means and frame, whereby the trailer may turn at substantially right angles to the log or logs carried thereby without interference therefrom."

[8] "13. A logging trailer comprising, in combination, transversely spaced wheels, a frame carried therebetween and adapted for attachment to a tractor, a rearwardly, upwardly inclined boom pivoted at its front end intermediate the ends of said frame and having guiding means thereon, and upright struts supporting said boom on said frame in such a manner that a line leading over said guid-

ing means may draw in a log and suspend it free of said struts below said boom whereby to permit said trailer to turn at substantially right angles to the trailing log carried thereby without obstruction therefrom.

"14. A logging trailer comprising, in combination, transversely spaced wheels, a frame carried therebetween and adapted for attachment to a tractor, a rearwardly inclined boom mounted on said frame, and upright struts connected intermediate the ends of said frame and supporting said boom in such a manner that the rear end thereof is unobstructed therearound whereby a line leading over and down from said rear end may so support one end of a log in raised hauling position as to permit the trailer to turn at substantially right angles relative to the trailing log while being entirely free thereof."

nothing new in these claims showing an invention or a patentable improvement over the Villair and Webster and Hyster trailers above referred to. For the reasons stated we hold that all the claims sued upon in the Langdon patent are invalid.

As we find all the patent claims in suit in each of the patents herein sued upon to be invalid the judgment of dismissal is affirmed.